CHARLES S. ARCHER, Respondent, v. THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY, Appellant.

In an action to recover damages for injuries alleged to have been caused by defendant's negligence, it appeared that plaintiff, as a passenger on the road of the N. Y. & N. E. R. R. Co., came into the depot at Hartford, Conn., which depot was built and used in common by that company and the defendant. There were exits from the depot on the east and west sides Plaintiff, who had never before been in Hartford, followed a number of other passengers out of the depot on to a platform running along its east side. One of defendant's tracks ran outside of the depot along near the platform, so close that its cars moving thereon overlapped the platform two or three inches and more acccording to the oscillations of the car. Cabmen were standing about ten feet from the platform, one of whom approached plaintiff and was engaged by him. He took part of plaintiff's baggage and proceeded to his cab a few feet distant, leaving plaintiff on the platform, when one of defendant's trains, moving at an unusually rapid rate upon the track, over which the the cabman had just passed, struck plaintiff and inflicted the injury. It was a dark, hazy evening. Plaintiff did not know of the existence of the track and did not see it. Both he and the cabman testified that they did not see the train or know of its approach and heard no bell or whistle. *Held*, that the evidence justified a submission of the case to the jury and was sufficient to sustain a verdict for plaintiff; that he was entitled to a safe passage out of the depot and had a right to act upon the assumption

106   589
113   364

106   589
118    88

106   589
125   148

106   589
139    83

that every necessary and reasonable precaution would be taken to make it safe; that he had a right to regard the platform as a safe and proper place; and that to bring, without notice, a train at such a speed up to a station and into the neighborhood of outgoing and incoming passengers, and so near a platform provided for them as to sweep a portion of it, was negligence.

Defendant is a Connecticut corporation. Plaintiff was permitted, on the trial against defendant's exception, to read in evidence portions of the statutes of that State relating to the running of railroad trains, and the court refused to charge the jury that they were not to be influenced by said provisions. *Held*, no error.

Plaintiff offered in evidence a photograph representing, as he claimed, the *locus in quo* of the accident, and testified that it represented fairly the locality. On cross-examination he testified that he did not take it and did not know from what point it was taken. The reception of the photograph was objected to generally and objection overruled. *Held*, no error; that the photograph, if a fair representation, was admissible the same as a map or other diagram.

(Argued June 20, 1887; decided October 4, 1887.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made May 29, 1885, which affirmed a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the material facts are stated in the opinion.

*Henry H. Anderson* for appellant. Defendant was bound to use every reasonable precaution, but not every possible one. (*Baulec* v. *N. Y. & H. R. R. Co.*, 59 N. Y. 357; *Hayes* v. *Forty-second St., etc., R. R. Co.*, 97 id., 259; *Searles* v. *Man. R. R. Co.*, 101 id., 661; *Weber* v. *N. Y. C. R. R. Co.*, 58 id. 462.) Upon the theory of the plaintiff's counsel that the plaintiff was struck by an overhanging or overlapping car, he must not only have leaned over, but also remained in such position at the edge of the platform while the locomotive and tender were passing by him, and thus would be chargeable with the grossest negligence. (*Becht* v. *Corbin*, 92 N. Y. 658; *Adolph* v. *C. P., etc., R. R. Co.*, 76 id. 530; 32 Hun, 241.) The defendant was not guilty of negligence.

(*Archer* v. *N. Y., N. H. & H. R. R. Co.*, 32 Hun, 241; *Wilcox* v. *R., W. & O. R. R. Co.*, 39 N. Y. 358.) Plaintiff should have kept himself and his parcels away from the edge of the platform. (*Dubois* v. *City of Kingston*, 102 N. Y. 219.) As this action was not based upon any alleged violation of section 73 of the Revised Statutes of the State of Connecticut, said section should not have been admitted in evidence. Under any circumstances it was immaterial, the tendency of its admission was to confuse the jury, and thereby injure the defendant. (*Harty* v. *Cent. R. R. Co. of N. J.*, 42 N. Y., 468; *Steves* v. *O. & S. R. R. Co.*, 18 id. 422; *Byrne* v. *N. Y. C. & H. R. R. R. Co.*, 94 id. 12.) The court erred in refusing defendant's request to charge that "a. person not a passenger of a railroad sought to be held liable in damages is bound before crossing a railroad track or entering or leaving a station to look up and down and listen for an arriving train. If he fails to do so he must suffer the consequences, if he knew the track was there." (*Terry* v. *Jewett*, 78 N. Y. 338; *Brassell* v. *N. Y. C. & H. R. R. R. Co.*, 84 id. 241; *Archer* v. *N. Y., N. H. & H. R. R. Co.*, 32 Hun, 24.) The court also erred in refusing defendant's request to charge that "if defendant's train, while proceeding along the Hartford station platform, was equipped with a head-light, and the bell of the engine was kept sounding, this was sufficient to apprise the plaintiff of the approach of the train." (*Culhane* v. *N. Y. C. & H. R. R. R. Co.*, 60 N. Y. 133.)

*Dennis McMahon* for respondent. If the requirement of the Connecticut statute had been complied with, viz., to commence ringing eighty rods below the street the train was about to cross, and such ringing had been kept up as required by said statute, it is fair to infer that plaintiff and his cabman would have heard it. (*McCallum* v. *L. I. R. R. Co.*, 38 Hun, 569; 101 N. Y. 419.) The plaintiff was guilty of no contributory negligence. (*Harvey* v. *N. Y. & W. R. R. Co.*, 21 Week. Dig. 198; *Glushing* v. *Sharp*, 96 N. Y. 677.) The trial judge erred in holding as matter of law that plaintiff

was, under the circumstances, guilty of contributory negligence. (*Greany* v. *L. I. R. R. Co.*, 101 N. Y. 423; *Williams* v. *D. & L. R. R. Co.*, 39 Hun, 430; *Raube* v. *N. Y. O. & W. R. R. Co.*, 102 N. Y. 721; *Vanderwold* v. *Olsen*, 1 id. 506; *Dobiecke* v. *Sharp*, 88 id. 208, 210; *Brassell* v. *R. Co.*, 84 id. 241; *Weston* v. *N. Y. C. R. R. Co.*, 73 id. 595; 75 id. 323; *McGuire* v. *Spence*, 91 id. 303; *Shaw* v. *Jewett*, 86 id. 617.) If plaintiff was hurt while crossing the track eastward he was not guilty of negligence, because he was prosecuting his journey to the place to which he was going. He had the right to cross the track. (84 N. Y. 246; *Voak* v. *N. C. R. R. Co.*, 75 id. 323.) The learned judge below properly admitted the reading in evidence of the seventy-third section of the Connecticut statute. (*Hunt* v. *Johnson*, 44 N. Y. 27; *Briggs* v. *N. Y. C. R. R. Co.*, 72 id. 26; *Knupfle* v. *Knick. Ice Co.*, 12 Week. Dig. 67; *McGrath* v. *N. Y. C. R. R. Co.*, 63 N. Y. 522; *Dyer* v. *E. R. Co.*, 71 id. 228; *Zimmer* v. *N. Y. C. R. R. Co.*, 67 id. 601; *Brassell* v. *N. Y. C. R. R. Co.*, 84 id. 241; *Terry* v. *Jewett*, 78 id. 338.) The photograph, which Mr. Archer testified fairly described the locality, was properly received in evidence. (*Arthur* v. *Roberts*, 60 Barb. 580; *Cozzens* v. *Higgins*, 1 Abb. Ct. App. Dec. 451; *Ruloff Case*, 11 Abb. P. R. [N. S.] 245, 309; 45 N. Y. 213; *Cowley* v. *People*, 83 id. 464, 476; *People* v. *Buddensieck*, 4 N. Y. Cr. R. 230; *Curtiss* v. *Ayrault*, 3 Hun, 487; *Johnston* v. *Jones*, 1 Black. U. S. S. C. 216.) There was no error in the judge's charge or in his refusals of requests to charge. (*Dobiecke* v. *Sharp*, 88 N. Y. 207, 208, 210; *Brassell* v. *Railway Co.*, 84 id. 241; *Western* v. *N. Y. C. R. R. Co.*, 73 id. 595; *McGuire* v. *Spence*, 91 id. 303; *Glushing* v. *Sharp*, 96 id. 677; *Shaw* v. *Jewett*, 86 id. 617; *Caldwell* v. *N. J. St. Bt. Co.*, 47 id. 282; *Roth* v. *Wells*, 29 id. 492; *Williams* v. *Earle*, 44 id. 171; *Brett* v. *Catlin*, 47 Barb. 404.)

DANFORTH, J. The action was brought to recover damages for injuries sustained, by reason of the defendant's negligence

in the management of its train, at a place known as the Union
Depot, in the city of Hartford. The plaintiff, as a passenger,
was brought into the station over another line (the N. Y. & N.
E. R. R.), which, as well as the defendant, had the right to
use and enjoy it for the receipt and delivery of passengers,
and no claim is made that he was not lawfully there. Nor is
it denied that he was hit and severely wounded by an incom-
ing train of the defendant. His right hand was so crushed
that amputation above the wrist was necessary, his skull and
scalp severely injured, the scalp so cut and torn from the
parietal bone, on the right side of the skull, that it was
entirely bare. There was also a fracture at that point. On
the right side of the back part of the head was a compound
comminuted fracture of the skull, and there were also bruises
on the face. Such were the injuries as described by the sur-
geon. A hand-bag, also, which the plaintiff was carrying in
his right hand, was at the same time injured. As to these
matters there was no controversy, and it stands as a fact in
the case that each injury was upon the right side, and upon
the upper part of the person, and none elsewhere.

The contention was against the plaintiff's claim as set forth
in the complaint, and in proof of which evidence was given,
viz.: That after disembarking from his train, and while stand-
ing upon the platform and preparing to leave, "he was run
against and knocked off the platform, and run over "by the
defendant's train coming from the south over a track laid just
east, and outside of the platform. He had never before been
in Hartford, and, as the complaint alleges and as he proved,
"was totally ignorant that there was any such track," or of
the approach of the defendant's train; and one point of
his accusation was that no preliminary warning was given to
him in that behalf; that it was dark; that the train came up
unseen by him, without notice of its approach, by bell or
whistle, or other signal, at an improper rate of speed, under
the circumstances, and "greater than the law permitted; that
on his part, he, with proper care was upon the platform in
the course of exit from the station, to go to his destination in

the city.  At the close of the plaintiff's evidence, the learned
counsel for the defendant moved for a dismissal of the com-
plaint upon the ground, first, " that there is no evidence in the
case of any negligence on the part of the defendant ; " and,
second, " that the plaintiff has not affirmatively proved himself
free from fault."  This being denied the defendant gave
evidence tending to show diligence and care on its part, and
as it claimed lack of care and prudence on the plaintiff's part,
to the effect that the plaintiff left the platform, crossed this
track, which lay to the east and got entirely over it, and then,
turned and attempted to recross the track to the platform, and
while so doing he was struck by some portion of the front part
of the engine, and thrown up ; that he fell between the train
and the platform, and that the injuries which he sustained
were received in this way.

The learned counsel for the defendant then repeated the
motion above referred to ; it was denied, and he moved the
trial court to direct a verdict for the defendant.  This, also,
was denied.  In submitting the case to the jury the learned
trial judge presented the facts and the evidence at the founda-
tion of the claims of the respective parties, and the principles
of law applicable thereto, in a manner so comprehensive and
fair that, so far as it concerned the conduct and duty of the
respective parties, no exception was taken by either.  The
defendant's complaint is that he did not say more.  Numerous
requests were made by its counsel for instructions to the jury,
and refused, but, of the exceptions then taken, only a few are
now insisted upon.  Other questions arise upon evidence.
But the first and principal contention upon this appeal is, that
the learned trial judge erred in not taking the facts away
from the jury and declaring, as matter of law, that the plaintiff
was not entitled to recover.

In an action for negligence the burden of proof is upon the
plaintiff to show that the injury complained of was caused by
the defendant, not in part, but solely, and so the courts hold
that the person injured must not, by his own negligence, have
contributed to the injury.  What was the plaintiff's conduct

at this time? He was brought into the depot by one of its owners; he was entitled to a safe passage out of it so that he could continue his journey to the place of destination, and he had a right to act upon the assumption that every necessary and reasonable precaution would be taken by its proprietors to make it so. He was discharged in the station and left to find his way out. The same roof covered the tracks and offices of the road he traveled and the tracks and offices of the defendant's road. The depot was built at one time and with reference to its being used by both companies; cross-walks were provided for the convenience of passengers arriving or leaving on either road, and passengers to and from the New England road were in the habit of crossing to the east side as the plaintiff did. He might alight from his train on either side, and from either side go directly from the enclosure. He was not told to go one way rather than the other; both were open to him; he saw no one to direct him and he followed a crowd of others, ten or fifteen in number, in the way they went. Neither way seemed appropriated to a particular road, and, in fact, it was not. The business part of Hartford was east of the depot, and so were the principal hotels and Main street. Cab stands were on each side, and whether the principal one was on the east side was in dispute. The plaintiff's intention was to go to the business part of the city, and he left the cars and crossed to the east platform to get a cab. Arriving at the platform he saw and heard cabmen standing some ten feet from the platform and calling aloud. He carried with him two valises, one a sample case, large and of considerable weight; this he placed near the outer edge of the platform, holding the other in his right hand. The rules of the depot prohibited cabmen from going on the platform. One approached and was engaged; he took up the large sample case, turned round and went toward his cab, leaving the plaintiff standing on the platform and facing the east. The cabman had but a few steps to go, and he placed the bag in his cab; "probably," he says, about a second elapsed between the time of the taking of the bag and placing it in his cab.

As he opened the cab door and put it in he turned and the train went by him, over the narrow space he had just traversed, and between himself and the platform. The cabman had not before seen the train and did not know of its approach; he heard no bell or whistle; it was dark, slightly misty, not raining, "a kind of hazy evening." The cabman was familiar with the running of trains; for two years he had been in the habit of going to the same place, and, he says, "the train came in pretty fast, probably going, may be, ten or twelve miles an hour." He shut the carriage door, got on the box "and drove to the tail end of the train." "I went," he says, "to look for the gentleman;" he saw a crowd of people on the platform surrounding the body of the plaintiff. It appears that a track of the defendant ran on a curve along by the platform, its inner or west rail two feet or two feet six inches from the outside edge of the platform, and when the train had passed the body of the plaintiff was found lying in this space, injured in the manner above described. The evidence was positive, and came from both sides, that the cars of the defendant were so constructed that at this curve they overlapped the platform two or three inches and more according to the oscillations of the car. There was generally an oscillation both ways, a vibration moving backward and forward. In coming from the south, as was the train in question, the cars project over the platform the whole length of the curve, and that took in the platform from the end of the depot south, and included, as the evidence tended to show, the place of injury, the spot where the plaintiff was standing. His evidence is positive that he never left the platform of his own volition; that he was standing there when hurt. He did not see the train approach; heard no signal; did not even know or see there was a track for that train, but he was struck by it and wounded. Upon this evidence it cannot be doubted that his injury was the result of the negligence of the defendant. His story cannot be rejected as an improbable one. He was a stranger, on the spot for the first time; the night was dark, his attention drawn to the cabman and his destination. He had no reason

to suppose the place was one of danger; it was outside the building; he saw no track; had just left the enclosed passenger station and did not anticipate the events which followed. He might instinctively regard a platform erected for passengers to be a safe and proper place for him. (*Hazman* v. *Hoboken L. & I. Co.* 50 N. Y. 60.) The conduct of the cabman also furnishes strong corroboration of the plaintiff. He knew of the existence of the track and its use, but within a second before the train ran upon the plaintiff he was standing before him, ignorant of its coming, negotiating for a fare and knew nothing of the impending danger until it passed. So the position and character of the injuries favor the plaintiff's version of the transaction. All were on the side exposed to the approaching train, and were of a character to be accounted for by such collision and the place where he was found, between the inner rail and the platform. If this evidence be true, the jury were at least authorized to find that the injury was occasioned solely by the defendant's negligence. To bring, without notice, a train at such speed up to a station, into the neighborhood even of incoming or outgoing passengers, would seem inexcusable; but when the cars brought up are so constructed as to overlap some portion of the platform provided for those passengers, a delinquency on its part is established of such a character as to prove *prima facie* the whole issue. If those circumstances were truly stated, the defendant failed to do the thing which it should have done, and did that which it should not have done. It was guilty of negligence in respect of running its train; and in respect to the construction of its platform and its car it was an actual wrong-doer, and the result attributed to it of loss and damage to a person situated as the plaintiff lawfully was might reasonably have been expected. The trial judge, therefore, did not err when, with evidence of these things before him, he refused to dismiss the complaint, for if the plaintiff not only neither saw nor heard a moving train, but was even ignorant of a track provided for it, he could not be chargeable

in law with negligence in assuming there was nothing to make his position dangerous.

The defendant's case presents a different theory. Its counsel argues that the plaintiff was careless in the manner of leaving the train by which he was brought into the depot, careless in going to and standing upon the platform; and more than that, if the extreme statements of the defendant's witnesses are to be credited, he was foolhardy and suicidal in leaving the platform in face of the approaching train, with its head-light blazing upon the track and its bell filling his ears with notice of danger. Nor can I say that there is no evidence from the defendant which, in some aspect, does not justify these inferences. It is at variance with that of the plaintiff, irreconcilably so. The defendant's witnesses are also at variance with each other, and their statements, as to certain material points, contradictory to the last degree. They agree, however, in this, that the head lamp was lighted, that the whistle sounded at the proper distance, and that on entering the station the bell was rung. The speed of the engine is put by them variously at four, five, six and eight miles an hour, as matter of opinion; but upon the main point raised by the defense, whether the plaintiff was on the track at the time of the injury, and not, as he claimed, on the platform, the difference between them is very great. The engineer of the train states that the head-lamp was lighted and so illuminated the track before it that if a man had been upon it he could have been seen at a distance of 300 feet. The engineer was on the right hand, that is, on the east side of the engine, looking ahead as he drew into the station, but did not see Mr. Archer that night. He saw no one in front of his engine, no one on the track, and knew nothing of the accident at the time it occurred. He was afterwards informed of it. The defendant's superintendent of motive power was at the station by the baggage-room; he heard the whistle and the bell. The engine was new, and he was watching its motion; "it labored exceedingly and moved very slowly coming into the station." While the train was in motion and had not wholly

passed the plaintiff, the witness saw him lying on his back between the west rail and the platform, next to the platform, his head toward the south. He went to him; the train had not stopped; his hand was then on the rail; the wheel took off the little finger and the one next to it. The witness reached down and put his hand upon plaintiff's heart, "so as to keep him from injuring himself further."

So far, the evidence is not inconsistent with the plaintiff's case. It certainly has no tendency to show that he was not knocked off the platform by the overhanging car. He was not seen upon the track by the engineer, although the latter was in position to see him if there, and, in the performance of his duty, was intent on discovering intruders or other objects in his way. The master mechanic, in all probability, would have seen him if upon the track and in the way of the locomotive. He did not, but following the rush of people he found the plaintiff where he naturally would have been had he, at the very moment, been swept off. Even when the train stopped, one or more of the cars had not passed him. The fireman was on the left or west side of the cab, looking out of the window. He did not see Mr. Archer or know of the accident until after the train had stopped. Other evidence was from one Downs, a teamster. He was, at the station and saw Mr. Archer before he was injured, standing on the platform and talking to a hackman. He heard the bargain made and at once stepped to the middle of the track, and from there to his horses, just outside the track. He did not see the plaintiff leave the platform, and next heard some one say a man was killed. This evidence also has some tendency to corroborate and strengthen the plaintiff's case, and, as the witness was near at hand, with his attention called to the train as it approached, presented the question whether, if the plaintiff had left the platform of his own will, he must not have seen him. Goff, a hackman, also called for the defendant, was on the east side of the east track, outside the depot, ten or twenty feet from the incoming train. He says: "I saw him (Archer) fall; my first impression was that he fell

from the engine, and when he fell he fell between the west rail and the platform; he fell lengthwise, pretty close to the platform." Or, as he put it again: "When I first saw him he was falling alongside the engine, on the side next the platform." The evidence of what he saw might be regarded as consistent with a fall from the platform as from the engine. He says again: "The first sight I had of the man, to my remembrance, was seeing him fall." The remaining witnesses for the defendant, if believed, leave nothing to be inferred as to whether the plaintiff suffered from the negligence of the defendant or his own voluntary act. They testify that the plaintiff left the platform, crossed the track to the east, and, after some delay, undertook to recross the track to the platform, and in the middle of his course back, and while on the track, was struck by the engine and thrown into the place where he was soon found. There were, however, many discrepancies in their testimony, some circumstances affecting their credibility, others of contradiction, and, upon the whole, an account which a trial court was not bound to accept as absolutely true. It could not be reconciled with the plaintiff's testimony or that of his witnesses, or with that of the engineer. It might be thought wholly at variance with the circumstances or fixed facts concerning which there was no controversy. The interval between the plaintiff's arrival at the depot and the coming in of the train was brief; the object of the plaintiff was to leave; his cabman had been secured; and if it could be urged that he might cross the track on his way out, no reason is, or can be assigned from the evidence, why, if he was once over it, he should desire to return to the platform. According to the defendant's evidence, the plaintiff was struck while in the middle of the track by the cow-catcher with such force and so directly that, as one witness says "he was thrown up in the air six to eight feet, as high as the top of the boiler." If such evidence could be reconciled with that of the engineer for instance — who, although looking, saw no one upon the track — or that of the master mechanic — who watched the approaching engine with a maker's curiosity as it came from

a point beyond the place of injury, and who must have seen the open track, but did not see the plaintiff, or with the condition of the body, which exhibited no wounds on the lower part of the person, or with the evidence of another witness of the defendant, its employe, who testified that he saw the plaintiff leave the platform, cross the track, and returning to the platform 'place one foot upon it,' only to be struck by the end of the crossbar of the engine and 'turned round' so that he went down between the wheels and the platform," and who being asked whether he "saw him caught by the cow-catcher and thrown in the air, answered 'no sir; if he was be would be killed sure;'" the questions arising on this and other evidence were for the jury. It was their duty to balance the probabilities and determine which side had the preponderance. They were to determine the credibility of the witnesses and say which version should be taken. Neither side lacked apparent corroboration.. The plaintiff's case, if unaffected by opposing circumstances and testimony, was made out. How far it was so affected was for the jury. The defense was not decisive. It rested wholly upon witnesses whose testimony was liable to be discredited, not only by inferences to be drawn from uncontroverted facts — and those inferences were for the jury to draw — but by circumstances in evidence which it was the province of the jury to weigh and determine, and also by contradictions and discrepancies in their own statements, which the jury alone could reconcile, choose from or reject, and in doing this, consider the bearing and deportment of the witnesses, from which important aid in arriving at the truth is not infrequently obtained.

.Two juries have agreed; two General Terms have been asked to review the facts; the first granted a new trial only for misdirection by the trial judge, the second affirmed the judgment which followed the new trial and affirmed the order of the trial judge, which denied a third. It is not for this court to decide whether the evidence was weighed as it would weigh it, nor whether it would have reached the same conclusion as that expressed by the verdict. The court which

heard it, and the court whose jurisdiction permits an inquiry upon the facts, are far better qualified to pass upon the credit and weight to be given to it than we could be. It is enough for us that there was sufficient evidence to present a case with two sides, and consequently sufficient for the jury to pass upon, and we see no reason to suppose they were not guided in their decision by a conscientious judgment and belief fairly formed in view of all the circumstances of the case. Nor do we find that the learned trial judge erred to the defendant's prejudice in the conduct of the trial. Exceptions were numerous, but those now insisted upon are few.

*First.* The injuries were inflicted by a company organized under the laws of Connecticut, and, therefore, subject to them. So much is admitted by the pleadings. In the course of the trial the plaintiff was permitted, against the exception of the defendant, to read in evidence portions of the statutes of that State, which relate to the running of railroad trains, stating at the time that he offered them as bearing upon the issue as to defendant's negligence. The objections were that, under the pleadings, the evidence was inadmissible, immaterial and irrelevant. The court, in its charge, made no allusion to those statutes, but defined the ground of defendant's liability, if any, and its duties in a manner satisfactory to the defendant's counsel, and was then asked by him to charge " that the jury, in considering the case, must not be influenced by section 73 of the Revised Statutes of Connecticut, which has been read in their hearing," and so in regard to sections 78 and 57. Section 73 related to the ringing of a bell on approaching a crossing and was proper and, in one view, important for consideration ; the others related also to the running of trains, and, though less important, were not irrelevant upon the question of negligence. It is quite impossible the defendant could have been prejudiced even without the qualification made by the judge when requested by plaintiff's counsel to charge that " if the jury should find that there were switches south of the depot and south of Asylum street, and that by the laws of the State of Connecticut, section 78 of the Revised

Statutes, a switchman was required to be stationed at night with a light at or near the switch, and the jury should further find that the absence of such switchman with a light contributed to the accident, then the defendants are guilty of negligence;" he said, "I decline to charge as requested, but I will submit to the jury the several facts set forth in the request for their consideration as to whether the company did exercise reasonable care and prudence in running the train." The point was presented in each instance whether the act or default of defendant contributed to the injury.

*Second.* The plaintiff offered in evidence a photograph representing, as he claimed, the *locus in quo* of the accident. The appellant alleges error in its admission. Upon the trial this occurred : The plaintiff, being on the witness stand, was asked to look at the photograph and "see if that describes fairly the locality?" Before answering he was questioned by defendant's counsel, and said : "This was not made by me : I don't know from what point it was taken ; I don't know to what point, as a focus, this instrument was directed. (Objected to by defendant's counsel ; objection overruled, and defendant's counsel excepted.) A. Yes, sir."

The proposition now submitted by the appellant to show error is, that "there was not sufficient proof of the point from, or the time at, which the photograph was taken to entitle it to be submitted to the jury as a picture of the premises as they existed at the time of the accident." The objection at the trial was a general one and within our decision in the *Cowley Case* (83 N. Y. 464, 476), unavailing. If a fair representation of the premises, it was admissible as an aid in the investigation, as much so as a map or other diagram, and served in like manner to explain or illustrate and apply testimony. Such drawings are uniformly received and are useful, if not indispensable, to enable courts and juries to comprehend readily the question in dispute as affected by evidence. (*People* v. *Buddensieck*, 103 N. Y. 487, 501.) Of course, its value, like the value of other evidence, depends upon its accuracy. There was some evidence of this and the witness

was not contradicted. No other exception appears to require notice and it only remains to affirm the judgment as one against which no error in law has been assigned. It is, therefore, affirmed.

All concur, except EARL, J., not voting.

Judgment affirmed.