Brady, J.
The plaintiff in this action sought compensation for injuries received through the negligence of the defendants and without contributory negligence on his part.
As a passenger he attempted to get into one of the defendants cars, and when he had partially accomplished his design the train was suddenly started and he was thrown back under the cars and seriously injured. The jury awarded him $25,000 damages.
*12 The defendants appeal upon the ground that the verdict was not only excessive but against the weight of evidencé. The testimony as to the occurrence is conflicting. It always is in cases of this character when employees of the road are examined. If the plaintiff, however, and his witnesses were worthy of belief, then the negligence of the defendants was established and the plaintiff was entitled to a verdict for the train was not in motion when he essayed to get into the car, of his right to do which there was no question. If, on the contrary, the train was in motion when he made the attempt the verdict should have been for the defendants, for it was the movement of the car which prostrated him and resulted in his injury, and the contributory negligence would have been established. Whether the train was in motion or not was therefore the crucial, the pivotal point upon which the case turned.
The testimony has been examined with reference to this subject, and it is found to be of such a character as to have demanded a consideration and determination by the jury.
That the plaintiff presented a, primafacie case is to be fairly inferred from the fact that no motion was made to dismiss the complaint either at the close of the plaintiff’s case, or upon conclusion of the evidence given on both sides. The charge of the learned judge presiding at the trial indicates the conflicting character of evidence and the issue on that as in all other respects was submitted to the jury fully and fairly. Indeed it is quite apparent from a perusal of the charge that the defendants’ rights were fully observed and protected by the rules of law declared, notwithstanding a few exceptions taken, and which will be discussed hereafter.
It may be that the witnesses called on behalf of the defendants were the more reliable, but the jury did not think so, and the evidence pro and con with all its details does riot convince us that they "were bound so to regard them. The rules for our government on that subject are well established, although expressed in varied language. A verdict should only be disturbed when it evinces'passion, prejudice, clear mistake or corruption, or shocks the common judgment of mankind. And a new trial should not be granted on the ground that the verdict is against the weight of evidence merely because the court may come to a conclusion differing from the verdict, unless the finding is without evidence or so decidedly against the weight of evidence as to indicate partiality, corruption or gross ignorance. And where there is contradictory evidence or evidence in conflict upon disputed questions of fact, the preponderence of evidence should be overwhelming to induce a court to disturb a verdict. And when the evidence is conflicting and in some respects *13 flatly contradictory, but there is some evidence which if fully credited would support the finding of the jury, it does not lie with the court to gainsay the verdict. It is the province of the jury to weigh and determine such evidence and the court should not áttempt to disturb their finding. And when questions of fact are clearly submitted to the jury, the verdict should not be interfered with, although the jury may have believed one witness in preference to three others to the contrary. Every intendment must be made in favor of the verdict as the decision of a tribunal upon which thelaw devolves the special responsibility of determining the credibility of witnesses. Hence a verdict will not be disturbed unless plainly unwarranted by the evidence by any favorable construction of it. It is not enough to set aside a verdict that there may have been a strong preponderance in favor of the defeated party. It is only where it is "so palpable that the jury have.erred as to suggest that the verdict was the result of misapprehension or partiality that the court will interefere.
The various modes of expressing the rule and its enlargement will be found in the following cases: Morss v. Sherrill, 63 Barb., 23; Beckwith v. The N. Y. C. and H. R. R. R. Co., 64 id., 299; McKinley v. Lamb, 64 id., 199; Cheney v. N. Y. C. and H. R. R. R. Co., 16 Hun, 415; Pope v. Allen, 10 Rep., 783; Bills v. The N. Y. C. and H. R. R. R. Co., id., Emberson v. Dean, 46 How., 236; Brookes v. Moore, 67 Barb., 393; Waters v. The Mutual Life Ins. Co., 7 Rep., 456; Fuller v. Fletcher, 11 id., 601; McCann v. Meehan,, 13 id., 224; Mengis v. Lebanon, id., 198; Archer v. N. Y., N. H. and H. R. R. Co., 11 N. Y. State Rep., 32; Lesley v. Keith, 9 id., 828: Redlein v. The L. I. R. R. Co., 7 id., 264; Reitmeyer v. Ehlers, 9 id., 63; Mulholland v. The Mayor, id., 85, 89, 90; Kimball v. DeGrauw, id., 339, 340. And in the very recent case of Archer v. The N. Y. C. and H. R. R. R. Co. (106 N. Y. Rep., 602), the Judge writing the opinion said: “It is not for this court to decide whether the evidence was weighed as it would-weigh it, nor whether it would have reached the same conclusion as that •expressed by the verdict.” And, again: “ It is enough for us that there was sufficient evidence to present a case with two sides, and consequently sufficient for the jury to pass upon, and we see no reason to suppose they were not guided in their decision by a conscientious judgment and belief, fairly formed in view of all the circumstances of the case. It has been said that there is a tendency to decide against corporations, and some surprise has been expressed that it should be so, but corporations are generally represented in the main by witnesses in their employment, some at least of whom are morally responsible for the conse *14 quence of their careless management, and personally interested in the result.”
Here, three witnesses give the same version of the occurrence, resulting in the plaintiff’s„injuries, two of whom are wholly disinterested.
There were'several called for the defendants, whose statements made a conflict, but the defendants had a detective-who was employed to collate the evidence and interview the witnesses, and whose methods and avowals were not well calculated to impress the jury favorably. And this may have done much to produce the verdict given. However this may be, the conflict existed, and' there were flat contradictions, but nevertheless the verdict" cannot be assailed within any one of the rules formulated by the adjudications cited, inasmuch as there was sufficient affirmative evidence to sustain it, giving credit to the plaintiff and his witnesses.
The appellant further contends, as suggested, that the damages were excessive. The compensation, in an action of this character, is not limited to bodily pain and suffering undergone prior to the trial, but extends to such further-sufferings as .the evidence renders it reasonably certain must necessarily result from the injury. And, further, it should embrace the value of the time lost as well as any permanent diminution of the power to earn money. Shear. & Red. on Negligence, § 600, and notes 13 and 14; Curtiss v. Rochester, etc., 20 Barb., 282; Aff’d 18 N. Y., 534; Strohm v. N. Y., L. E. & W. R. R. Co., 96 id., 305; Ehrgott v. The Mayor, etc., same, 264.
The rule of damages declared in the charge was not disputed, and there does not seem to have been any contradictory evidence in reference to- the plaintiff’s elements of loss and injury presented to the jury for their consideration.
From these it appears that the plaintiff was a practical jeweler, and had been for many years, during which time-he had established a business which was extensively of repairs, and which he had the capacity to make. The loss of his arm deprived him of this power, and permanently so. Science coupled with marvelous mechanical skill has not yet supplied any proximate substitute for that member of the body in its varied uses and powers. The earnings which marked his business, averaged about $2,600-per annum, have not been reinstated, although he has resumed business, and this loss, added to a full compensation for suffering and future damage resulting from the loss of his arm, may, without a great effort, be readily put down at the sum given by the verdict.
There are other elements which enter into compensation *15 for the destruction of an arm than pain and suffering and loss of power to earn money. The great deprivation of the capacity which follows to do many things essential to the common comforts of life, preparing food to eat, dressing, lifting, carrying; the numerous uses of the arm for assistance to family or self for pleasure or from necessity as a means of defense, aside from the inexpressible sense of the want of that member, the deformity occasioned by its absence, and the depressing effect of the consciousness of a crippled condition. All these are part "of the suffering.
These are the consequences of the injury inflicted, and if the test were what any human being in full health would take for an arm, the sum named would be considered absurd. It is known that such a test may not be applied, and that under our rules actual loss must bear an important part in the estimate of damages, but there is in addition, this element of pain and suffering present, past, and future, which is broad enough to embrace all that should be justly considered and fully paid for. Where a wrong has been done the evil-doer must suffer from-the impossibility of ascertaining with accuracy the amount of compensation which should be awarded.
The rules by which the propriety of the amount of damages awarded are to be reviewed, are therefore not difficult of exposition. When, as in this case, they are peculiarly within the province of the jury, the court will not interfere unless the damages are so excessive in proportion to the injury inflicted as to justify the conviction that the jury were misled by passion, prejudice, ignorance or corruption, or it manifestly appears to be the result of one of these elements. Sedg. on Meas. Dam., 73; Minick v. City of Troy, 19 Hun, 253-258; Coleman v. Southwick, 9 Johns., 51, 52; Kiff v. Youmans, 20 Hun, 123.
The law has, in actions for personal injuries committed the determination of the amount of damages to the experience and good sense of jurors. And when the verdict rendered by them may reasonably be presumed to have resulted from an honest and intelligent exercise of judgment, the policy of the court is, and necessarily must be, not to interfere with their conclusion. Daniels, J., in Walker v. Erie Railway Co., 63 Barb., 266.
There is nothing to indicate that the jury were influenced by any one of the prohibited motives in framing their verdict or to justify the conviction that their verdict was not the result of an honest or intelligent exercise of their judgment, and nothing appears, therefore, within the rules controlling the subject discussed, requiring any interference with the finding of the jury as excessive in amount.
If the result in kindred cases be a guide, the verdict is *16 not excessive. In Stringham v. Stewart, 1 N. Y. State Rep., 769, and Harrold v. The N. Y. Elevated R. R. Co., 24 Hun, 184; Ehrgott v. The Mayor, 96 N. Y., 264 (supra), the verdicts were from $25,000 to $42,000. In Voss v. Third Avenue R. R. Co. (49 Superior Ct., 535), the amount-awarded was $20,000 for the loss of a leg, and the judgment was affirmed (100 N. Y., 621). In Dike v. The Erie R'way Co. (45 N. Y., 113), the award was $35,000 for injuries to one leg broken and .the other bruised, but neither amputated.
It is not necessary, however, to accumulate instances in which apparently large damages have been awarded, and those cited are only referred to, to show that sums equal to, and in excess of the amount allowed the plaintiff herein ■have been given and sustained, and therefore the verdict-herein is not without precedent.
The appellant presents for consideration four exceptions. The first is as follows : ‘' Plaintiff’s counsel—I ask your
honor to charge the jury that the defendant was bound under the circumstahces'of this case, as presented by the-plaintiff, to allow him a reasonable time in which to get on the train, and is responsible for any injury resulting to him from the slightest motion of the car during the entrance of the plaintiff, as such passenger, in such reasonable time.
“ The court—I so charge, subject to the qualification that I charged before. That is the law, of course, if a passenger presents himself as a passenger, to get aboard the train, before the conductor has actually signalled the engineer to* start.”
The defendant excepted, and said nothing more. The qualification made by the learned trial justice made the request unassailable. If a passenger present himself before the signal to start is given, the cars must remain motionless until he has entered. It is the duty of the defendants to see to it that no one is injured in the exercise of the right of boarding the cars. If one conductor cannot do it then they should employ more. The disposition to consider human safety secondary to speed is a growing evil, if it have not already reached fruition, but a combination of speed and safety is not impossible if proper means be adopted to secure it. ‘' The carrier of passengers and vehicles propelled by steam is bound to use every precaution which human skill, care and foresight can provide. Caldwell v. N. J. Steamboat Co., 47 N. Y., 283. Aside from this, if the charge as a whole conveys to the jury the correct rule of law upon a given subject, the judgment will not be reversed. An appellate court will not- seize an isolated portion of a charge for the purpose of discovering error. We must look at the whole charge. Caldwell v. N. J. Steam *17 boat Co , supra. (See same doctrine reiterated in Losee v. Buchanan, 51 N. Y., 476. The second exception to the charge relates to the following request, -which was granted: “Plaintiff’s counsel—I ask your honor to charge the jury that the defendant is liable, whether the signal by the conductor or brakeman to start has been given or not, provided a reasonable opportunity was not afforded to the passenger to get on board the train.”
The objection to it is founded upon the proposition that the defendants’ liability rested, also, upon the plaintiff’s freedom from negligence. The same response must be given to this exception. The whole charge clearly places the right of the plaintiff to recover upon the grounds, first, of his own freedom from negligence; and secondly, the negligence of the defendants, both of which must concur. The issue presented this distinctly upon the question, whether the cars were moving when the plaintiff attempted to get on. The learned justice said, however, in granting, the request: “As to passengers presenting themselves as such, before the signal was given. I so charge. This was a qualification of the request and made it unobjectionable. It has been properly held that if the train be stationary, and no signal be given of the intention to start, it is not negligence to enter it, and it was said, Yah Bbunt, P. J., “ that if any other rule were to prevail, then, no matter how negligent the employees of the railroad might be in starting the train, the passenger would be guilty of negligence in attempting to board it, although the train was standing apparently waiting for passengers to enter.” Schestanber v. Man. Railway Company, 9 N. Y. State Rep., (May, 1887), 215, 218, 219, 220.
The other two exceptions are to evidence, but are of no value and require no particular examination.
The judgment for these reasons should be affirmed, with costs.
Yah Brunt, Oh. J., and Daniels, J., concur.