[S. F. No. 14494. In Bank.—February 1, 1934.]

T. J. HALLINAN, Appellant, v. KIRK H. PRINDLE et al., Respondents.

Vincent W. Hallinan, Joseph J. Bullock, C. K. Bonestell, Felix M. Cunningham and Michael Riordan for Appellant.

Hartley F. Peart, Hadsell, Sweet & Ingalls, Redman, Alexander & Bacon, Ross & Ross and Herbert Chamberlin for Respondents.

THE COURT.—On and prior to December 7, 1929, Kirk H. Prindle was a licensed physician and surgeon of this state, practicing his profession in San Mateo County, and having an association with the Church of St. Matthew Mills Memorial Hospital and also with Dr. Chidester, medical superintendent and director of said hospital, which institution will hereafter be referred to as the hospital. Ann H. MacKinnon had been in the employ of the hospital as a nurse approximately one year and a half at the time plaintiff sustained the physical injury for which damages were sought against the defendants. She was in charge of the emergency room and also had charge of the preparation of the rooms in which minor operations were performed. No other qualification or experience is shown.

Church of St. Matthew Mills Memorial Hospital is a corporation existing under the laws of this state and its principal place of business is at the city of San Mateo. It was incorporated in November, 1911, in the name of the Church of St. Matthew Red Cross Hospital. The original articles of incorporation declare that the incorporators "voluntarily associate themselves together for the purpose of incorporating a private corporation" and that the purposes for which it is formed are "to conduct and maintain" said hospital "established in the city of San Mateo . . . by Elizabeth Mills Reid; and to establish and maintain in connection therewith a school or schools for the training of nurses for the care of the sick; and to acquire, hold and own property and to receive gifts, bequests and devises for the conduct and maintenance of the said hospital and schools." On June 9, 1921, upon petition of the directors to the Superior Court of the County of San Mateo, the name of said hospital was changed to Church of St. Matthew Mills Memorial Hospital and the business of the hospital has since been conducted

in the latter name. The reasons given for the change of name are: First, that the hospital which said corporation conducted was established by Elizabeth Mills Reid, and the Church of St. Matthew and Mrs. Reid had from the time of its establishment contributed to the support and maintenance of said hospital and furthered financially and otherwise the growth and use of the same; second, that the words "Red Cross" had "caused confusion in the minds of people not accurately informed regarding the plan of its operation, one of the most common misunderstandings regarding the method of operation being that it is an institution maintained and supported by the American Red Cross, and that it has some connection with or is a part of the charitable institution and organization known as the American Red Cross. That this corporation has no connection with and is not a part of the American Red Cross and is not supported nor maintained by it, nor does it have or receive any financial aid or otherwise from the American Red Cross''.

The above contains all there is to be found in the articles of incorporation bearing upon the question as to whether the hospital was a charitable institution. Respondent hospital contends that plaintiff comes within the rule that where one accepts the benefit of a public or of a private charity, he exempts by implied contract the benefactor from liability for the negligence of the servants in administering the charity if the benefactor has used due care in the selection of those servants. ■ The character of the corporation, however, is to be determined not alone by its powers as defined in its charter, but also by the method of transacting the business of the hospital. (*Stewart* v. *California Medical Missionary & Benevolent Assn.*, 178 Cal. 418 [176 Pac. 46].) The evidence on this phase of its character, while somewhat scant, will be considered later.

The plaintiff, a married man, was manager of a title and trust company, and a resident of Hillsborough, near the locality in which the hospital is located. He had had his appendix removed by Dr. Chidester at said hospital some time before he was operated upon for the removal of a cyst upon the exterior wall of the abdomen, out of which operation this action arose. After the appendix operation he consulted Dr. Chidester upon a condition of sterility and was turned over by Dr. Chidester to Dr. Prindle, whom he

understood to be the house physician and assistant of Dr. Chidester. Plaintiff was advised by Dr. Prindle to have the cyst removed and was assured that it would be a very minor operation and would cause him no great inconvenience. Accordingly plaintiff entered the hospital and Dr. Prindle directed Ann H. MacKinnon, the nurse, to put the operating room in order and instructed her that he would use novocaine as the local anesthetic. Instead of furnishing novocaine as the anesthetic to be injected, she prepared and brought to the surgeon a solution of formalin, admitted to be a highly dangerous caustic and corrosive fluid which rapidly destroys the flesh and bodily tissues. Supposing the solution so furnished to be novocaine, without making an investigation for himself, he injected the formalin solution into plaintiff's abdomen and upon observing a violent reaction upon the part of the patient he discovered the mistake and immediately injected novocaine into the area in which he had previously injected formalin, and also removed by incision, as far as possible, the area affected by formalin. That the corrosive substance destroyed quite an area of flesh and tissue of the body and caused the plaintiff to suffer great pain during the slow healing process there can be no doubt. As to the permanency of the damage suffered by reason of the burns which he received from said injection there is a conflict in the evidence.

Plaintiff by his action for damages suffered by reason of said negligence joined the hospital, the physician and nurse as tort-feasors. He alleged that the hospital was managed and operated for hire and that the nurse was the employee of Dr. Prindle and the hospital. The acts constituting negligence as to each participant are set forth in painstaking detail and the pain suffered by plaintiff and the probable effect of said injuries upon his organism are meticulously set forth. It is pertinent to observe here that by reason of the allegations of the complaint as to the manner in which the tort was committed and the evidence introduced by plaintiff—including the examination of the defendant physician—the doctrine of *res ipsa loquitur,* invoked by plaintiff, was eliminated from the case by the affirmative showing made by plaintiff as to the manner in which the injuries were inflicted, even if this were a case in which

the doctrine might otherwise have been properly applied, which question we do not decide.

The principal point presented by appellant goes to the substance of the verdict and the refusal of the court to return the jury to the jury-room with directions to correct or make clear an enigmatical verdict, and its refusal thereafter to enter a judgment against all three defendants in the sum of $10,000, that being the amount of damages which the jury found plaintiff had suffered as set forth in the verdict returned as against the hospital. Said verdict was as follows: ''We the jury in the above entitled cause find for the plaintiff as follows: Against Kirk H. Prindle in the sum of $ No dollars. Against Church of St. Matthew Mills Memorial Hospital, a corporation, in the sum of $10,000. Against Ann MacKinnon in the sum of $ No dollars.'' Before presenting its verdict the jury returned for instructions as to whether it would be permissible to find in different amounts against the several defendants. That is, whether, if it found all several defendants joint participants in the commission of a tort, but believed one or two less culpable than the other—or the others—it could apportion the amount of damages according to the degree of culpability which it should find that each particular defendant's participation therein merited. There seemed to have been some confusion in the mind of the court as to the exact information the jury desired, but it was finally instructed that it could not apportion the damages, and it again retired to the jury-room. Soon thereafter it returned with the verdict above set out. Upon receiving the verdict the court ordered it recorded. Immediately after the verdict had been read as recorded, Mr. Hallinan, appellant's counsel, addressing the court, moved the court to return the jury to the jury-room. He contended that the verdict was void for the reason that the jury could not apportion the damages, as he contended it had attempted to do by the verdict returned. His contention was that the verdict was in effect a verdict against all of the defendants and the jury should be instructed to specifically find against the other two defendants in the same sum as it found against the hospital, to wit: In the sum of $10,000. Counsel for the other respective defendants objected to a reconsideration of the verdict. Quite a colloquy took place between Mr. Hallinan and the court as to what the

procedure should be. Mr. Hallinan said to the court that the verdict was void and the jury should be given an opportunity to correct it. The court replied that he did not have the power to do it and expressed regret that he had no such power. Mr. Hallinan replied that the court had the power to correct the verdict. The court thereupon said: "Now the case is over, I will say that I agree with you that it is not a proper verdict to render, but it has been rendered and I shall not direct them to render any other verdict," and it thereupon dismissed the jury. Shortly before the final arguments commenced the court inquired of counsel the time they desired to present their arguments to the jury, whereupon the following occurred:

"Mr. Bacon: I really do not know. I had a motion I think that would be in order at this time on behalf of the hospital, under the decision—

"The Court: A motion for a non-suit?

"Mr. Bacon: A directed verdict.

"The Court: I would rather that comes up later on, maybe after the jury has returned the verdict, not now."

Nothing further was done in the matter until the court reconvened the following day. The jury was dismissed on the previous day. Plaintiff contended that the verdict was *against* all the defendants and the damage suffered by plaintiff had been definitely fixed by the jury at $10,000, and therefore it became the duty of the court to assess a like amount against all the joint tort-feasors. This motion was denied. The attorneys for the hospital suggested to the court that they had requested permission of the court on the day before to make a motion at this time (the day following) for a directed verdict in favor of the hospital notwithstanding the verdict, as provided by section 629 of the Code of Civil Procedure, reserving the right to move for a new trial in the event the motion was denied. They thereupon asked the court to enter a judgment in favor of the hospital notwithstanding the verdict rendered against it. The ground of the motion as then and there stated was that the evidence showed that the hospital was a charitable institution and that due care had been used in the selection of its employees and nurse. The insufficiency of the evidence was urged as a ground for entering said judgment. The attorney for the nurse requested, in view of the form of the verdict, that

judgment be entered in her favor on the ground that the jury so indicated by its verdict. The attorney for the physician also moved for judgment notwithstanding the verdict, on the ground of insufficiency of evidence to support a judgment against him. The court summarily held that the verdict was in his favor and he had no ground of complaint. The learned judge further said that there was much merit in the motion made on behalf of the hospital. He also expressed himself as not in sympathy with the verdict and thought it absolutely wrong, but it was not the time to pass upon it as the matter would all come up on motion for a new trial.

■ The motion made on behalf of the hospital for judgment notwithstanding the verdict was granted. This was error. The hospital did not at any time move for a directed verdict. As shown by the above quotation from the record, its attorney *thought* that such a motion "would be in order", but the court remarked that he would prefer that that matter come up after the jury returned its verdict. Here the matter was dropped and no motion for a directed verdict was made. It is obvious that the motion could have been nothing more than a belated gesture after the jury had performed its office and had been dismissed. This point was definitely settled in the *Estate of Caldwell,* 216 Cal. 694 [16 Pac. (2d) 139], citing a long list of authorities, including *Estate of Easton,* 118 Cal. App. 659 [5 Pac. (2d) 635]; *Estate of Yale,* 214 Cal. 115 [4 Pac. (2d) 153]; *Estate of Fleming,* 199 Cal. 750 [251 Pac. 637]. The Caldwell case holds that the making of a motion for a directed verdict is a condition precedent to the entry of judgment *non obstante veredicto.* (Sec. 629, Code Civ. Proc.) The situation discussed in that case is very close in all material respects to the situation in the instant case. There the attorney expressed his intention of asking for a directed verdict. The judge there, as here, said he preferred to let the case go to the jury and that he would exercise his prerogative after the jury passed on the matter. ■ This court said: "This statement of respondents' counsel was not a motion for an instructed verdict. A motion is an application for an order (sec. 1003, Code Civ. Proc.) and counsel's statement of what he intended to do was not an application for an order. Neither can the language of the court, though indicating perhaps that his opinion on

the facts favored the cause of respondents, be considered an order. An order is a direction of a court or judge, made or entered in writing, and not included in a judgment. (Sec. 1003, Code Civ. Proc.)'' ▮ A requested instruction for a directed verdict is not a compliance with the requirements of said section 629. (*Estate of Caldwell, supra.*) ''The main purpose of the statute in requiring such a motion to be made as a condition precedent to the exercise of the court's power to render judgment *non obstante veredicto* is to give the party against whom the motion is directed an opportunity to introduce further and additional evidence he may have at hand to overcome the *grounds* of the motion.'' (*Estate of Caldwell, supra; Estate of Easton, supra.*) (Italics ours.)

▮ The court was therefore without power to render judgment in favor of the hospital, as no motion was made, and consequently no opportunity was given to appellant to offer evidence to supply whatever defects the moving party may have pointed out. The court may have granted a new trial, if so advised, after the entry of judgment in conformity with the verdict. This was the limit of its power. The verdict was so unusual in form and substance as to have confused the court and all the attorneys engaged in the trial of the cause. Even the attorney for the nurse, who claimed the verdict acquitted her of all liability, moved to make the judgment more certain in her favor. The attorneys for Dr. Prindle, who now claim the verdict was in their client's favor, gave notice of appeal from the judgment as entered upon the verdict to the first appellate district, ''from the judgment made and entered in the above entitled action on the 4th day of June, 1931, in *favor of plaintiff and against defendant Kirk H. Prindle*''. (Italics ours.) They also gave notice to the county clerk to prepare the record on appeal.

▮ Appellant contends that it was the jury's effort to exculpate the nurse and the physician, who, he contends, were joint tort-feasors and mulct the hospital for the entire damages. Unquestionably this is true as to the nurse. She was called by the plaintiff as a witness and admitted that she took from a medicine cabinet containing a number of other bottles, some of which contained dangerous corrosive substances, and without looking at the label of said bottle,

or otherwise making any kind of examination as to the contents of said bottle, the one containing formalin and prepared the solution which was injected as an anesthetic. It is the testimony of both the nurse and the physician that formalin, which is a solution of formaldehyde, gives out an exceedingly sharp, penetrating odor. The only suggested mitigating circumstance which she offered in her defense was that the operating room contained such odors as are ordinarily present in an operating room, and that said odors had a tendency to neutralize the formalin odor. The bottles in the cabinet were labeled, and when asked if she read the label before pouring the fluid into the glass for use she answered: "I hardly could have read it and poured out the formalin." She made no defense to the action, but nevertheless the verdict of the jury does not assess her with any damages. As to her it reads: "Against Ann H. MacKinnon in the sum of $No dollars." Did the jury mean to say that notwithstanding her admissions of negligence and all the other evidence corroborating her admissions that she was not a participant in the tort, or did it conclude that she was but the servant or employee of the hospital and that the hospital for some undisclosed reason should bear the entire award? The verdict cannot be explained on any legal ground so far as the nurse's liability is concerned. There is not a scintilla of evidence to support a verdict in her favor. The allegations of the complaint that she was negligent in her duties were not contradicted. It would be an anomaly and contrary to the decisions of this court to hold her to be free of negligence and to hold the hospital, whose agent she was, guilty of negligence. There is force in the argument of appellant that the jury passed the matter of liability for the tort on to her principal and, contrary to the rule, did in effect forgive one admittedly a tort-feasor and penalize the other. That the jury desired to apportion the damages is made plain by the information which they requested from the court as to whether they could return a verdict fixing varying sums against the several defendants, or whether "all would have to be alike". After considerable discussion between court and jury they were told substantially that in an action against tort-feasors the law will not permit an apportionment of damages, since it will not attempt to measure the degrees of culpability of the joint tort-

feasors. (*Davis* v. *Hearst*, 160 Cal. 143 [116 Pac. 530].) Finding they could not apportion the damages the jury placed the whole amount of damages assessed upon one of the alleged tort-feasors. This in effect was a violation of the principle laid down in *Davis* v. *Hearst, supra,* and many other decisions.

The evidence as to the surgeon's responsibility was a contested matter. One ground of justification urged was that it was the practice and custom of physicians practicing in the community or locality in which he practiced and treated appellant for the physician to accept without test or question the anesthetic prepared by the nurse in charge of the operation in hand. It is contended by the appellant that the pungent odor should have been detected by the operating surgeon and that the nurse, although employed generally by the hospital, was under the personal direction and control of the surgeon and that she was selected by him as his assistant and thereby the surgeon became responsible for her negligence. Other issues are raised, but in view of the order of retrial which we feel compelled to make under the state of the record we express no opinion at this time as to the effect of the evidence before us or which might be presented in another trial. The hospital insists that it is exempt from liability on the ground that it is a charitable institution and therefore not responsible for the negligent acts of employees, provided it has used care in their selection. We have set forth all there is in the charter bearing upon the purposes of its incorporation, including its reason for changing the name made necessary to avoid the common mistake that it was connected with the charity administered by the American Red Cross, and also to honor the name of its benefactor.

Evidence was offered tending to establish the charitable character of the hospital on the one hand and counter-evidence was offered tending to show it was operated for profit even though the general purposes may have been charitable. (*Stewart* v. *California Medical etc. Assn.,* 178 Cal. 418 [176 Pac. 46].) A conflict exists as to this issue.

Having pointed out reversible error in one or two specific instances and considered the nondescript character of the verdict, we are of the view that it is too incomprehensible to support a judgment in favor of any of the parties to

the action. The jury should have been returned to the jury-room with instructions to reconsider and reframe their verdict. We also feel that the examination of witnesses was too strictly limited in several instances.

The judgment is therefore reversed as to each of the defendants and the entire cause is set at large.

Rehearing denied.