[Civ. No. 16295. First Dist., Div. One. Nov. 30, 1955.]

WOODY GIBSON, Appellant, v. SOUTHERN PACIFIC COMPANY (a Corporation), Respondent.

338

Fitz-Gerald Ames, Sr., for Appellant.

R. Mitchell S. Boyd, and Dunne, Dunne & Phelps for Respondent.

BRAY, J.—Action for damages for personal injuries sustained by plaintiff when struck by defendant's train. Motions for nonsuit and directed verdict were denied. The jury awarded plaintiff $75,000. Defendant moved for judgment notwithstanding the verdict and for a new trial. The court granted the former and denied the latter. Plaintiff appeals from the judgment notwithstanding the verdict.

## QUESTIONS PRESENTED

1. (Raised for the first time on petition for rehearing.) (a) May a motion for directed verdict be made in chambers? (b) May the record on appeal be augmented by the certificates of the trial judge and courtroom clerk? (c) May a motion for directed verdict be made after argument has begun?

2. Was plaintiff contributorily negligent in assuming that all portions of the railroad platform were safe from overhang of passing trains?

3. Should evidence of suction power of the train have been admitted?

4. Was the court inconsistent in denying defendant's motion for new trial but granting its motion for judgment notwithstanding the verdict?

## FACTS

Except as to just when the train's whistle was blown there appears little, if any, conflict in the evidence. Westerly, opposite Bay Meadows race track, defendant's railway tracks run north and south. On the west side of the west rail and distant 1 foot 9 inches therefrom defendant maintains an asphalt pathway or platform* 8 feet wide, about at the level

---

*The witnesses variously referred to it as walk, pathway and platform. We have accepted the designation preferred by both counsel, "platform," although in so doing we do not consider that the difference in nomen-

of the ties except at the Hillsdale station and Bay Meadows crossing platforms, where the asphalt is level with the tracks. This platform connected the much wider platform at the Hillsdale station with that at the Bay Meadows crossing. It was used both for walking between those platforms, and for boarding trains which stopped there on occasion to pick up race track patrons. The engine which struck plaintiff had an overhang which extended 1 foot 2½ inches over the platform. The edge of the platform was 1 foot 9 inches from the nearest rail. The platform extends southerly from the Bay Meadows crossing (an infrequently used commuter stop) some 1,200 feet to the Hillsdale station. The tracks here and for a considerable distance southerly are straight. The platform is used by passengers and other pedestrians. This fact was well known to defendant. (Defendant concedes it owed a duty of due care to persons using the platform.) Near the station for a distance of 380 feet and near the crossing for a distance of 230 feet a white line extends along the platform sufficiently far from the rails to clear the engine's overhang. The railroad's maintenance official testified that such lines are painted on some of the "passenger loading platforms to indicate the extremities of the loading zone . . ." In the intervening distance of approximately 600 feet there is no white line. Near sundown, with the weather clear and light, a slight breeze blowing about 5:50 p. m., plaintiff had walked across the crossing intending to go to Bay Meadows track. As he got to the gate of the track, the crowd started coming out. He noticed a train standing to the north. He assumed it was headed north. Assuming that the races were over, he retraced his steps to the west side of the tracks. While on the crossing he seemed to hear a couple of train whistles. He made no assumption as to their source. He walked south on the platform. He heard a train whistle, probably a little deeper in tone than the whistle or whistles he heard at the crossing. (This was 10 to 15 seconds before he was struck.) He continued walking forward and "took probably a half step to the right" (away from the track). He heard no sound of grinding such as would be caused by the application of locomotive brakes. The half step to the right placed his left foot about 22 inches away from the track edge of the asphalt. He has a faint recollection of being

clature makes any difference in the respective duties of the parties. We might add that in our previous decision we referred to it as "pathway" and were taken to task for so doing by plaintiff in his petition for rehearing.

"spun," feeling heat in his face and seeing a wheel of the engine. The next thing he remembered he was talking to a San Mateo policeman after the accident. He was then lying to the west of the platform at a point about halfway between the crossing and the station. This was plaintiff's first time on the platform. He did not know that a locomotive would overhang the platform. Plaintiff suffered serious injuries to his shoulder, arm, elbow and his leg was "mashed."

The engineer died prior to trial so his story is unknown. The fireman, whose view was obstructed by the engine for the last 300 feet before the impact, at that point observed a group of people walking southerly along the platform, their backs toward the train. He could not tell how close they were to the edge. People "too often" walk alongside the track there, fairly close. The usual speed at this point is 50 miles per hour. No stop at either Hillsdale station or Bay Meadows crossing was intended. Immediately north of the crossing there is a whistle post. Admittedly the whistle was blown there. There was evidence that the whistle was not sounded after the engine reached the crossing. One Harland, walking north on the platform, passed plaintiff walking south. He heard a whistle, turned around and started walking south. At that time the train was about 600 yards away. When he was about 10 to 20 feet behind plaintiff he heard the whistle again. The train was then possibly 300 yards away. He did not have too much of an idea on that. Harland turned over to the right and stopped. When the train passed him he saw some part of the front part of the engine strike plaintiff. Plaintiff was then about 2½ feet from the edge of the platform nearest the rail. It looked to Harland as though plaintiff, who was walking straight, was in the clear. Harland had the impression that plaintiff was sucked into the train. Harland then stated that the whistle was going continuously until the time of the accident.

A railway "red cap" walking on the platform saw plaintiff about 350 feet ahead of him. Plaintiff was walking close to the track edge of the asphalt. The whistle was blowing continuously when it passed the witness. The train hit plaintiff and spun him to the right.

Defendant's maintenance official testified that prior to May, 1946, there had been a gravel path which was 3 feet 6 inches in from the point where the track edge of the asphalt now is. The old path was completely clear of the engine overhang.

1. *Motion for Directed Verdict.*

 We granted a rehearing in this case because the record failed to show that a motion for directed verdict had been made, such motion being a prerequisite to a later motion for judgment notwithstanding the verdict. (Code Civ. Proc., § 629; *Estate of Caldwell*, 216 Cal. 694, 697 [16 P.2d 139].) Defendant moved, and we granted permission, to augment the record to show that such motion was made. Certificates of the trial judge and courtroom clerk were filed. These show that after both sides had rested their case, and at the opening of court at the end of a recess during defendant's argument, defendant's counsel approached the bench and stated that he desired to make a motion outside the presence of the jury. The judge, because "there were no available facilities for the jurors except for the courtroom," directed counsel for both parties, the clerk and the reporter, to proceed to the judge's chambers adjoining the courtroom so that the motion could be heard and argued outside the hearing of the jurors. In the presence of the persons above mentioned and without any objection by plaintiff, defendant moved for a directed verdict. The motion was argued by counsel for both parties. The motion was submitted. The court outside of the hearing of the jury made its order denying the motion and the clerk entered such order in the minutes. The court and the other participants then proceeded to the courtroom where the jury was seated and defense counsel then continued with his argument to the jury. On the motion for judgment notwithstanding the verdict no contention was made by plaintiff of any irregularity in the making of the motion for directed verdict nor was it contended that the court had no power to grant such motion.

(a) Motion Made in Chambers.

Plaintiff contends that a judge has no jurisdiction to hear or determine motions in chambers other than those expressly included in section 166, Code of Civil Procedure. Assuming that ordinarily a motion for directed verdict cannot be heard in chambers, the hearing of such a motion there would be merely a nonprejudicial irregularity and not jurisdictional. See *Hamblin* v. *Superior Court*, 195 Cal. 364 [233 P. 337, 43 A.L.R. 1509], where the court tried a default action for divorce in Long Beach, pursuant to a statute held to be unconstitutional. The court held that "proof which the law requires to be 'taken before the court' was in fact taken before the judge" (p. 371), that the "result

is that the evidence so heard by it was in effect heard by the judge 'in chambers' '' (p. 373), and that this was a mere irregularity, was not jurisdictional and did not render the judgment entered thereon void. See also *Holland* v. *Superior Court*, 121 Cal.App. 523 [9 P.2d 531], where the trial judge wrote out in the county clerk's office an order denying a motion for new trial and modified the findings and judgment. This order was lost after entry into the minutes. One of the grounds upon which the petitioner sought to prohibit any further proceedings under the order was that the judge had no jurisdiction to sign the order at the clerk's office as that would not be a session of the court. In denying prohibition the court stated (p. 528): ''The weight of authority in California which receives support in other jurisdictions seems to support the conclusion that if it be assumed that it is error for a court to hold its session at a place other than in its courtroom, the error, if any, is one of law to be reached only on direct attack and not one resulting from a lack of jurisdiction or an act in excess of jurisdiction . . .''

As the proceeding here, if error, could not be jurisdictional, plaintiff may not complain of error because of his failure to object in the proceedings in the court below. In *Hersom* v. *Hersom*, 60 Cal.App. 383, 385 [212 P. 717], it was held that the appellant could not complain of the receiving of evidence in chambers in the presence of counsel for both parties, because of her failure to object to the holding of court there.

However, the record here discloses that although taking place in chambers it was a full court session. To save inconveniencing the jurors, the court transferred its session to its chambers, and all of the attachés of the court and all counsel were present. It was a situation similar to that in *People* v. *Pompa*, 192 Cal. 412 [221 P. 198], where considerable testimony was taken and evidence received by the jury at the scene of the alleged crime. Concerning the claim that this was a jurisdictional error the court said (p. 422): ''But the record expressly discloses that during the entire proceedings attending and embracing the view of the premises the court in its completeness, including the judge, the clerk, the bailiff, the reporter, the interpreter, the jury, the defendant, and the respective counsel was at all times present, the only element absent being the walls and fittings of the courtroom wherein the court is usually convened. There is no special sacredness in the atmosphere of a courthouse or the walls or furnishings of a courtroom which requires that

sessions of the court shall be held there and not elsewhere, if otherwise the forms of law governing the trial of causes are observed, which appears to have been done, though with some absence of formality, in the instant case (*Block* v. *Kearney,* 6 Cal.Unrep. 660 [64 P. 267]); but aside from this we think that the defendant is precluded from objecting to any of the alleged informalities in the procedure of the trial court during its view of the premises in question by the fact of the entire acquiescence of himself and the acquiescence and even active participation of his counsel in the taking of testimony and receiving of evidence by the jury during the inspection of the scene of the homicide.''

Thus, the proceedings in chambers, including the making of the order denying the motion, are properly a part of the record on appeal. The contention that because defendant opened his motion by stating ''I want to move now for a directed verdict,'' he actually made no motion, is quite amusing in view of the length of time plaintiff then spent in arguing against the granting of the motion. There is no merit to the contention. The same is true of the contention that the motion did not contain the grounds of the motion. There is no similarity in the facts of our case and those in *Hallinan* v. *Prindle,* 220 Cal. 46 [29 P.2d 202], where the plaintiff stated (p. 52), ''I had a motion I think that would be in order,'' for a directed verdict and the court said, ''I would rather that comes up later . . . not now.'' The motion was not made later. Here it was made, grounds given, argued and passed upon.

(b) Augmentation.

 Plaintiff contends that rule 12a, Rules on Appeal, does not permit augmentation by a certificate of the trial judge or courtroom clerk. He contends that the language ''or that portions of the oral proceedings be transcribed, certified and transmitted'' applies only to oral proceedings reported below but not transcribed. This would be a most peculiar rule if it were interpreted to mean that this court in passing on the action of a trial court could not have before it the proceedings upon which that court based its action, merely because, for any reason, the whole of the proceedings was not reported. Here, the court reporter did report portions of the hearing and they are included in the judge's certificate to which the reporter attached his certificate. Rule 12b provides ''If any material part of the record is incorrect in any respect . . . the reviewing court . . . may direct that

it be corrected or certified.'' Here the record was incorrect in not showing the proceedings on motion for directed verdict. Rule 12c provides that this court may submit to the superior court for settlement any differences of the parties with respect to alleged errors or omissions in the record, and then states, what unquestionably is the reason behind all the rules on augmentation, to ''make the record conform to the truth.'' Plaintiff has cited no case which holds that certificates of the type here may not be used to augment. *Biaggi* v. *Ramont,* 189 Cal. 675 [209 P. 892], is not in point. There the trial judge denied a motion for new trial without giving insufficiency of the evidence as a ground. After appeal, he tried by certificate filed in the reviewing court, to get the transcript returned so as to permit a *nunc pro tunc* order to be made to change the order denying new trial to include that ground, claiming that the clerk failed to include it in the original order, although the judge had instructed him to do so. The reviewing court refused to consider the certificate. In our case the certificates are not for the purpose of changing any part of the record, but merely to add to it the matters which occurred but which were not placed in the original transcript.

(c) Timeliness.

While a motion for directed verdict should be made at the completion of the taking of evidence, as the main purpose of requiring such a motion to be made as a condition precedent to the court power to consider a motion for judgment notwithstanding the verdict, is to give the other party an opportunity to introduce evidence he may have to overcome the grounds of the motion (*Estate of Caldwell, supra,* 216 Cal. 694, 697) it is within the discretion of the court to permit it to be made at any time before the case is submitted to the jury. That in effect is the holding in *Red Boiling Water Co.* v. *McEwen,* 3 Tenn.Civ.App. 687, cited by plaintiff, although, under the circumstances there, it was held that the action of the trial court in refusing to entertain the motion as being too late, coming after argument had started, could not be upset by the appellate court. Here, again, plaintiff in the trial court made no objection to the timeliness of the motion, nor to the court's hearing the same. It is too late to do so now.

### 2. *Contributory Negligence.*

The judgment notwithstanding the verdict was granted on the theory that plaintiff was guilty of contributory negligence as a matter of law. The evidence shows without conflict that plaintiff walked some 600 feet down the platform close to

the railside edge of the platform. Although he admittedly heard a train whistle when he was at the crossing before starting down the platform he made no effort to locate it or to learn if there was any train approaching from his rear. At no time during his movement down the platform did he glance behind to observe if there were any trains approaching. About 10 to 15 seconds prior to the accident he heard another whistle which "probably sounded a little deeper in tone" than the previous one. He then continued walking forward and took a half step away from the rails "to be safe." This placed his foot nearest the track approximately 22 inches from the edge of the asphalt and approximately 3 feet 7 inches from the nearest rail. He continued on in this location until hit. Although he heard a whistle and felt it necessary to do something "to be safe," he did not look around to determine where the whistle came from or to see if he were in a safe position.

If defendant owed plaintiff the duty of maintaining the entire platform free from danger from overhang of trains and suction, then plaintiff could not have been guilty of contributory negligence* for if plaintiff had the right to assume that all portions of the platform were safe, then under the facts of this case he was under no duty to look for approaching trains.

The question here is, by the constructing of a platform close to its tracks, does a railroad impliedly represent to users thereof that all portions of the platform are safe, thereby relieving the user from the necessity of watching for approaching trains when walking close enough to the tracks to be struck by the overhang of the train, or to be drawn into the train by suction? ▪ In *McKeown* v. *Northwestern Pac. R. Co.*, 20 Cal.App.2d 324 [66 P.2d 1250], the court said (pp. 326-327): ". . . it is the uniform rule that where a passenger places himself so near the edge of a railroad platform as to be within the line of the ordinary overhang of a train, he contributes to the injury and other things being equal, cannot recover. [Citations.]"

---

*Defendant, although not conceding its correctness, is not attacking (except as it relates to the maintenance of the platform) the jury's implied finding of negligence. Defendant's negligence was not in building the platform in the manner it did, nor in operating an engine with the overhang of the one here, but in operating its train at 50 miles per hour in an area where many persons were congregated, and in failing to operate cautiously when the engine crew must have seen persons walking close to the tracks, as the testimony shows, in ample time to have slowed down.

While the facts in our case are distinguishable from those in the McKeown case, that difference would not change the apparent universalness of the rule (see cases cited in the McKeown case, p. 327, and the cases hereafter discussed), nor the application of the principle to the facts of our case. In the McKeown case, the plaintiff was familiar with the station platform and with the normal overhang of engines, while here plaintiff was using the platform for the first time and knew nothing of engine overhang. In the McKeown case, although denied by the plaintiff, there was testimony that as the train approached she deviated from her course to approach nearer the edge of the platform. In our case, after hearing a whistle, plaintiff took a half step away from the track. In the McKeown case the engine overhang was either flush with the edge of the concrete platform, or overhung it an inch; thus the plaintiff's arm must have extended either beyond the platform or within an inch of its edge. In our case the engine overhung the platform 14½ inches. Plaintiff's feet were probably 2½ feet from the platform's edge. Only his elbow could have extended into the space occupied by the engine's overhang. The other differences between the two cases bear on defendant's negligence rather than on plaintiff's duty.

In *Holmes* v. *South Pac. Coast Ry. Co.*, 97 Cal. 161 [31 P. 834], the railroad tracks were in the street. There was a space of 3 feet between the sidewalk at the station and the nearest rail. The plaintiff was walking in this space. When the whistle sounded the plaintiff stepped partly upon the track and was hit. Again, here, the facts are not similar to ours but the court pointed out that there are many cases supporting the principle (p. 167): "A railroad track upon which trains are constantly run is itself a warning to any person who has reached years of discretion, and who is possessed of ordinary intelligence, that it is not safe to walk upon it, or near enough to it to be struck by a passing train, without the exercise of constant vigilance in order to be made aware of the approach of a locomotive, and thus be enabled to avoid receiving injury; and the failure of such a person, so situated with reference to the railroad track, to exercise such care and watchfulness, and to make use of all his senses, in order to avoid the danger incident to such situation, is negligence *per se.*"

In *Norfolk & W. Ry. Co.* v. *Hawkes*, 102 Va. 452 [46 S.E. 471], because of a curve in the track, the projection from the train overhung the platform varying from 1¼ to 10

inches and at the point where the train was struck it was 6½ inches. The plaintiff knew that the train was approaching. Of a person's duty at a railroad platform the court said (p. 472): "It is manifest that this duty requires the railroad company to construct its platform sufficiently near to the rails that it will afford to passengers, including the aged and infirm, a safe exit to and from the trains. And it is a matter of common knowledge that in performing this duty the platforms along the best-regulated railroads are built so near the rails that the projections from the engines and cars will overlap, to some extent, the edge of the platform. While the extreme edge of the platform is perfectly safe for passengers when occupying it for the purpose to which it is manifestly adapted, it is a matter of common knowledge that it is a place of danger when occupied while trains are passing or are likely to pass."

In *Higgins* v. *Erie R. Co.* (1916), 89 N.J.L. 629 [99 A. 98], the plaintiff was familiar with the platform and the coming and going of trains there. He was drawing a hand truck on the platform and either drew it so near the platform's edge that it was struck by the engine tender's overhang or in turning he brought the truck against the tender. "The law is well settled in this state that where a person places himself so near the edge of a railroad platform as to be within the line of the ordinary overhang of a properly constructed platform and engine he contributes to the injury, and the company is not liable for the injuries he may suffer from such negligent exposure to danger." (P. 99.)

In *Long* v. *Delaware L. & W. R. Co.* (1941), 127 N.J.L. 207 [21 A.2d 824], the court quoted the above statement in holding negligent a plaintiff who was struck by a handrail of a passing car, while standing on a platform 19 feet 2 inches wide between two sets of tracks.

In *Ratliff* v. *Chesapeake & O. Ry. Co.* (1940), 116 F.2d 155, the plaintiff standing on the station platform was trying to flag the approaching train so that she could board it. She was struck by a crossbeam on the front of the engine which overhung the platform 1½ or 2 feet. It was claimed, as here, that the platform as constructed was an implied assurance that any portion of it was safe from passing trains. The court said (pp. 156-157): "None of the cases cited by appellant holds that such a facility as is here involved,—entirely adequate and safe when used as ordinary persons would use it,—is unsafe merely because it does not prevent careless persons from putting themselves in positions of danger."

In *Ferran* v. *Southern Pac. Co.*, 3 Cal.2d 350 [44 P.2d 533], the court referred to the general rule quoted above in *Holmes* v. *South Pac. Coast Ry. Co.*, 97 Cal. 161 [31 P. 834], but held it did not apply to persons required to cross intervening tracks to board cars who are injured while doing so.

As *contra* to the principle enunciated in the foregoing cases, plaintiff cites the following: *Chunn* v. *City & Suburban Ry.*, 207 U.S. 302, 303 [28 S.Ct. 63, 52 L.Ed. 219]. There the platform which was customarily used by passengers intending to use the Washington car was one between two sets of tracks and was 7 feet 10 inches wide. The steps of defendant's cars projected 2 feet 2 inches over the platform, so that when two cars passed each other at this point (which was the situation when the plaintiff was hurt) the clear space left for the passenger to stand in was only 3 feet 6 inches. The court held that "the margin of safety was narrow and left little allowance for the infirmities of mankind. In the confusion of two cars approaching from opposite directions it is too much to expect nice calculations of distances. It is not to be wondered at that in the attempt to escape the one the plaintiff fell foul of the other." (P. 308.) "Nor was the plaintiff necessarily wanting in due care by taking her place between the tracks. It was the usual place from which entrance to the Washington car was made. It was safe enough under ordinary circumstances. It was made unsafe only by reason of the defendant's negligent act in running another car rapidly by. The plaintiff had the right to assume . . . that when it [the defendant] stopped one car and thereby invited her to enter it, it would not run another rapidly by the place of her entrance and put her in peril." (Pp. 308, 309.) The court did not discuss the general rule of passengers on station platforms, nor even the exception stated in *Ferran* v. *Southern Pac. Co., supra*, 3 Cal.2d 350 (passengers crossing tracks) but rested its decision primarily on the narrowness of the platform provided for its patrons. In many details the facts in *Lagomarsino* v. *Market St. Ry. Co.*, 69 Cal.App.2d 388 [158 P.2d 982], were similar to those in the Chunn case, and the ruling was the same. A somewhat similar case to the Chunn case is *Edwards* v. *Union Pac. R. Co.* (1913), 90 Kan. 183 [133 P. 728, Ann. Cas. 1916A 137]. There the court's decision was based principally upon the fact that the station platform where the plaintiff was required to go because of the crowded condition of the rest of the platform, and where she was struck by a locomotive overhang of about 27 inches, was less than 5 feet

wide between the rails and a depot bow window. The trial court had given an instruction on contributory negligence embodying the general rule. In holding that the instruction was improper under the circumstances of the case, the court said (p. 729): "Had the evidence shown that the platform space about the window had been comparatively free and unobstructed, and that plaintiff, with ample opportunity to choose a safe place to walk, had put herself or remained in a position of obvious danger from incoming trains, the instruction would have stated the law correctly. Her testimony, however, is that she was endeavoring to get past the narrow space in front of the window, and because of the crowd of persons about her she was prevented from realizing her danger . . ." Thus, the decision cannot be construed as applying to the facts of our case.

Nor is *Jaques* v. *Southern Pac. Co.*, 8 Cal.App.2d 738 [48 P.2d 63], in point here. There two sets of railroad tracks were maintained in the street, each set operated by a different company. Between the tracks there was a safety zone 3 feet 10 inches wide. However, the defendant's cars overhung this zone so that there was less than 22 inches left for a person to stand in. While the plaintiff was standing in the safety zone awaiting an approaching car of the other company, defendant's train passed by. Its great speed drew the coat which she was wearing into contact with the train so that she lost her balance and was thrown or fell under the wheels. The court in upholding a judgment in the plaintiff's favor did not discuss the law of contributory negligence involved other than to say (p. 740): "It is then argued that the respondent should have anticipated the danger from suction to a person standing near a railway track and that she was therefore guilty of contributory negligence. Manifestly, if the engineer, who had operated trains for more than thirty years, was not chargeable with knowledge of this particular danger it cannot be said as a matter of law that an eighteen-year-old school girl should be deemed to have anticipated the same danger." It then stated that the question of contributory negligence was one of fact properly left to the jury— an entirely different situation from the one in our case, where on a sufficiently wide platform plaintiff by walking dangerously near to the track, and without any effort to determine whether he was safe from train overhang or suction, chose to violate the rule which the cases hold is well settled, namely, that a person on a station platform must look out for a train's overhang.

In *Becker* v. *City & County of San Francisco*, 121 Cal. App.2d 723 [264 P.2d 133], while standing on a street curb at a regular bus stop the plaintiff leaned forward and his head came in contact with the side of a moving bus. Judgment for the defendant was affirmed. Apparently the case is cited by plaintiff here because the court approved an instruction to the effect that it would be negligence for the bus to be operated in such manner that any portion of it extended over the curb. Such a ruling, however, in no way minimizes the railroad platform rule heretofore mentioned.

In *Campbell* v. *Yazoo & M. V. R. Co.* (1909), 95 Miss. 309 [48 So. 618, 21 Ann.Cas. 1179], the plaintiff stood on the concrete platform between the waiting room and tracks, his back to the tracks. He was struck by the engine bumper which overhung the platform 2 inches. It was held that " '. . . being in a place where he is invited to be by the company, he has a right to suppose that he will be safe from collision with a train running on the track so long as he occupies a place on the platform, and the mere fact that plaintiff, while on the platform, did not look behind him for an approaching train, cannot be held evidence of contributory negligence . . . Negligence is not imputable to a person for failing to look out for danger, when, under the surrounding circumstances, the person sought to be charged with it had no reason to suspect that danger was to be apprehended.' " (P. 619.) This case does not refer to the before-mentioned "uniform rule." (*McKeown* v. *Northwestern Pac. R. Co.*, *supra*, 20 Cal.App.2d 324.)

In *Archer* v. *New York, N. H. & H. R. Co.* (1887), 106 N.Y. 589 [13 N.E. 318], the plaintiff while on the station platform was struck by a car which overhung the platform 2 or 3 inches. It was held that the plaintiff could not be chargeable with negligence as a matter of law in "assuming there was nothing to make his position dangerous." (P. 321.) No reference is made to the uniform rule. Moreover, it appears that the platform in the Archer case was one between railroad tracks and there was evidence that the plaintiff did not know and because of the peculiar situation was justified in not knowing that there existed the track upon which the train which injured him came.

Except as to situations of platforms between tracks where the rule is different than the one applicable here, plaintiff has cited and we have found no case holding that a person has the right to assume that a platform or pathway is safe

from overhang of passing trains, except *Edwards* v. *Union Pac. R. Co., supra,* 133 P. 728, where it was held that the plaintiff forced by the crowd upon the platform to place herself in a position of danger would have been negligent had she not been forced to do so; and *Campbell* v. *Yazoo & M. V. R. Co., supra,* 48 So. 618, which does not refer to the platform rule. Moreover, these cases were decided many years before the court in the McKeown case, *supra,* stated that the rule was "uniform."

 Defendant's engineer of maintenance of way and structures testified that it is a general policy of defendant to paint lines on a platform to mark danger points. This fact, however, does not change the rule regarding the fact that parties using such platform may not assume that all portions are safe. While in this case there were white lines on the Hillsdale station and Bay Meadows crossing platforms, plaintiff at no time testified that he was misled by the absence of white lines between. Prior to the construction of the present platform there had been a gravel pathway, all portions of which were clear of the engine overhang. There is no evidence that plaintiff knew of the white lines where they existed nor of the previous pathway. We can see no practical difference between a station platform and a platform between station platforms, so far as the duty of a railroad company to its users is concerned. Actually, it would appear that its duty at a station platform would be at least as high, if not higher, than on a platform of the type here. On occasion it was used as a loading platform for race track trains. Station platforms are places where many people gather, where there can be confusion and milling around. A platform between station platforms ordinarily has no such congestion.

 Of course, the platform constituted an invitation from defendant for people to use it, just as any railroad platform does, but it is an invitation to use it with ordinary care. It is a matter of common knowledge that it is dangerous to stand close to a fast moving train, both because of overhang and suction. To hold that it is a question of fact whether a person is using ordinary care in walking in any portion of the danger zone which everyone knows exists, without making any effort to determine whether he is without the overhang and suction area, means that the liability of a railroad to a person on its platforms or pathways is absolute. The case of *Cameron* v. *City of Gilroy,* 104 Cal. App.2d 76 [230 P.2d 838], is not applicable. A city

ramp does not carry with it the warning of danger that railroad tracks, platforms and pathways do. With this warning of danger, no person may assume without looking (particularly when warned by the whistle of an approaching train) that he knows the overhang and suction distance of a train. ■ The distance which a person reasonably must walk from train tracks is that distance which will clear him of overhang and suction. That distance is not determined by a blind guess, but by observation, particularly when he knows a train is approaching.

■ Usually, of course, the question of contributory negligence is one for the jury and it is only where no fact is left in doubt, and no deduction or inference other than negligence can be drawn by the jury from the evidence, that the court can say, as a matter of law, that contributory negligence is established. (*Zibbell* v. *Southern Pac. Co.*, 160 Cal. 237, 240 [116 P. 513].) ■ In view of the well settled rule as to station platforms, plaintiff's conduct under the circumstances leaves no possible inference other than that he was guilty of contributory negligence.

3. *Train Suction.*

■ Plaintiff offered a qualified expert who would have testified to the "suction pounds pressure" developed by a train traveling at 50 miles per hour (the speed maintained by the train which struck plaintiff) and which would have been exerted upon plaintiff, "taking into consideration the fact that . . . [plaintiff] was first hit and then spun facing back with his back to the train and then the amount of pressure that was exerted upon him to throw him into the train, together with his off-balance condition and together with his spinning motion would have been sufficient to pull him into the train." The court refused to admit the testimony. It is not clear to what issue this testimony would have related. Were it to the effect that suction initially might have pulled him into the train, it would be relevant on the question of defendant's negligence in driving a train at great speed alongside a platform on which there were a number of people. But the evidence was offered not to prove this, for it was proposed to relate only to what occurred *after* plaintiff was first struck. There could be no error in excluding it for this purpose, as there was no contention that plaintiff's injuries were not caused by the accident, so that just what occurred after he was first struck is not too important on the question of the negligence of either party.

■ While plaintiff could have offered it to tie into Harland's testimony that it appeared to him that plaintiff was sucked into the train, plaintiff expressly stated it was for the other purpose. If offered for the purpose of corroborating Harland, it should have been admitted. However, its exclusion was not prejudicial, because the negligence of defendant was equally true whether the accident was caused by plaintiff's arm being extended into the path of the overhang of the engine or by his being caught by the suction of the train. Likewise, plaintiff was equally negligent whether he allowed his arm to extend into the path of the engine's overhang or walked so close as to be sucked in by an approaching train.

### 4. *Inconsistency of Rulings.*

■ Plaintiff contends that in denying defendant's motion for new trial but granting its motion for judgment notwithstanding the verdict, the court acted inconsistently, in effect, holding on the motion for new trial that the evidence was sufficient to support the jury's verdict, and on the motion for judgment notwithstanding the verdict that it was not, because as a matter of law the jury's finding that plaintiff was not contributorily negligent was not supported.

Section 629, Code of Civil Procedure, dealing with both of these motions, does not appear to meet the situation here. It provides what happens if the court (a) grants a new trial and denies judgment notwithstanding the verdict, (b) where both motions are denied. It appears to us that the effect of the trial court's action is a finding that if it was wrong in determining that plaintiff was guilty of contributory negligence as a matter of law, then it sees no reason for disturbing the jury's verdict and the judgment on that verdict would stand as the judgment in the case. We see no inconsistency in the court's action.

The judgment is affirmed.

Wood (Fred B.), J., concurred.

PETERS, P. J.—I dissent from that portion of the majority opinion that holds that the trial court properly entered a judgment notwithstanding the verdict on the theory that plaintiff was guilty of contributory negligence as a matter of law. That issue, in my opinion, was clearly one of fact and not of law. I agree with all other portions of the majority opinion.

The basic fallacy in the majority opinion is that it discusses the facts and law relating to the issue of contributory negligence of the plaintiff as if they were unrelated to the facts and law relating to the duty owed by defendant to plaintiff. The two are, of course, integral parts of the same problem.

The jury here found that defendant was negligent. While the majority do not discuss at any length the nature of the duty violated by defendant, they do assume the sufficiency of the evidence to sustain the finding, and defendant does not challenge this assumption. The jury also found that plaintiff was not contributively negligent. The majority hold that this finding is unsupported, and that the jury, as a matter of law, should have found to the contrary.

It does not require citation of authority to establish the proposition that the issue of contributory negligence is normally one of fact. On this issue, the trial court has no legal right to grant motions for a nonsuit or directed verdict or to enter a judgment notwithstanding the verdict (nor has the appellate court the legal right to affirm orders granting such motions or to reverse a verdict) except in those rare cases where there is no evidence, or no reasonable inference from the evidence, that would support a verdict for the plaintiff. In reviewing the propriety of orders granting such motions, only the evidence most favorable to the plaintiff need be considered, and all conflicts in the evidence must be resolved in favor of the plaintiff. The appellate power begins and ends with the determination as to whether there is any evidence, or any reasonable inference from the evidence, that would support a verdict for the plaintiff. These rules are elementary. The majority give lip service to them, but, in my opinion, simply disregard them.

The majority assume that whatever duty was owed by the defendant to plaintiff was violated. There is little discussion as to the precise nature of that duty. It is self-evident that, before it can be determined if plaintiff, as a matter of law, was contributively negligent, we must know and discuss the duty owed by defendant to plaintiff. The jury could have found, and on this appeal we must presume it did find, that defendant was negligent not only in operating its train at 50 miles per hour under the circumstances, not only in failing to apply the brakes before they were applied, and not only in failing to give adequate warning, but could and we must presume did find, that defendant was negligent in

building the pathway* between the crossing and station platforms in the manner it did when it knew that its trains would overhang the rails 3 feet, and the pathway 14½ inches. If it was negligence for defendant to run a train as it did that had a 3-foot overhang beyond the rails and a 14½-inch overhang over the pathway, then the plaintiff was not guilty of contributory negligence simply because he walked on the pathway with his feet over 3 feet from the rails.

Negligence and contributory negligence are not abstract concepts, but must be determined by the facts of the particular case. What are the pertinent facts? Here the railroad knew that the pathway involved was to be used by a large number of people. The pathway was designed and constructed by the defendant for the use of these people. The railroad invited the public to use it. At the Bay Meadows crossing, and at the Hillsdale station, at the two ends of the pathway, there were large paved platforms constructed flush with the rails with a white line carefully painted on them that indicated the danger zone near the rails. This raises the reasonable inference that the railroad was actually aware of the danger of the overhang and conceived its duty to be to warn the public of the danger on these portions of the area involved. Then between these two extremities, for a distance of about 600 feet, the railroad designed and constructed a connecting asphalt pathway. This was constructed below the level of the rails at the level of the ties. It was 8 feet wide. The closest edge of the pathway was 1 foot 9 inches from the rails. There was no physical reason why the pathway had to be constructed close to the rails, the right-of-way in the area being quite wide and level. These facts raise the natural inquiry as to why, if the defendant believed the two terminals were places of danger requiring a white line to show the areas of danger, a white line was not also necessary on the 600-foot pathway? The engine involved overlapped the rails for 35½ inches, and overlapped the pathway 14½ inches. The plaintiff's feet, when he was hit, were not only over 3 feet from the rails, but were on, and well within, the very pathway designed and constructed

*There is considerable discussion in the briefs as to whether this construction was a "pathway," a "walkway," or a "platform." The witnesses used all three terms. If any different legal results follow from the use of one term or another, then that term most favorable to plaintiff must be adopted, this being an appeal from a judgment notwithstanding. I have decided to use the term "pathway" because I believe that term most accurately describes the actual condition.

358

by the railroad for the use of persons having the status of plaintiff. Under these circumstances, could the jury not find that the railroad by constructing the pathway as it did, impliedly represented to persons rightfully using it that it was a safe place on which to walk? Could the jury not find that plaintiff in using the pathway as it was intended to be used was not contributively negligent? The answer to these questions seems so clear that further discussion should be unnecessary. Plaintiff saw the pathway constructed as described. He used it for the very purpose that defendant intended that it be used. Certainly, the mere presence of the pathway constituted an invitation to walk on it. Constructed as it was, the jury could have found, and we must presume it did so find, that included within the invitation was the representation that the entire paved area was safe. Thus, so far as the duty of the defendant is concerned, the jury could have found, and we must presume it did find, that defendant invited plaintiff to use the pathway, owed a duty to him and others to maintain all of it in a safe condition, and represented that all of it was a safe place on which to walk.

If these conclusions are sound, they necessarily dispose of the question as to whether plaintiff was guilty of contributory negligence as a matter of law. Of course he was not. The defendant is forced into the position of asserting, and the majority opinion impliedly approves the assertion, that every pedestrian who accepts defendant's invitation to use the pathway, which it designed and constructed, by that very use, as a matter of law, is guilty of contributory negligence by using the pathway, in that he cannot assume that the pathway is safe but must assume that it is unsafe. That this is not the law seems clear. Mr. Justice Dooling in discussing the law applicable to a factual situation not different in principle to the one here involved, stated the applicable law as follows in *Cameron* v. *City of Gilroy*, 104 Cal.App.2d 76, 80 [230 P.2d 838] : "The ramp [constructed by the city for the use of pedestrians] was patently designed for pedestrian traffic and for that purpose alone, and the casual pedestrian would be readily persuaded, without giving the matter further thought, that he might safely use a facility obviously supplied by public authorities for his convenience as a member of the public. The appellant city is in the position of asserting [as does defendant in our case] that every pedestrian who accepted its invitation to use this ramp which it designed and constructed for that very use must be held as

a matter of law to have assumed the risk of injury. The conduct of a person of ordinary prudence is the legal standard in such cases and the court was well within the bounds of its fact finding power in determining that a person of ordinary prudence would have used this facility under the circumstances.''

The majority say that plaintiff was contributively negligent because, although well within the limits of the path, he walked so close to the rails that the court must say that, as a matter of law, he was guilty of contributory negligence. A reasonable man, say the majority, should have known that the area where he was walking was dangerous. This is an unwarranted conclusion. Of course, the mere existence of railroad tracks is a warning of danger and a person walking on the tracks must anticipate, at his peril, the presence of trains. It is equally true that a reasonable man knows or should know that a train or engine overhangs the rails to some extent. Within that distance from the rails a reasonable man knows or should know that he is in a position of danger. He is required to exercise the same care of self-protection that is required of a person on the tracks. But what is the distance from the rails that a reasonable man should know is a position of danger? Certainly, there is some distance so close to the rails that any reasonable man would say is a position of danger. Within that undefined distance we can safely say that a pedestrian has voluntarily placed himself in a position of danger, and, if hurt, is guilty of contributory negligence as a matter of law. This conclusion was properly reached in those cases cited by the majority holding that a person walking within 6 inches or a foot of the rails is guilty of contributory negligence as a matter of law. But the other extreme also exists. There is some undefined distance from the rails that to any reasonable man is a position of safety. In that area we can say that a person just by walking there, is not, as a matter of law, guilty of contributory negligence. We do not know whether that distance is 4, 5, 6, or more, feet from the rails, but whatever it is, once determined, persons in that area are free from contributory negligence as a matter of law. But in between those two extremes there exists an area where the question as to whether plaintiff was or was not negligent becomes a question of fact for the jury. That is this case. The test is whether a reasonable man, under the circumstances here present, should know that an engine overhangs the rails for a distance of 3 feet.

Certainly, until I read this record, and I have ridden trains as much as most, I did not know that fact. Until I read this record I would have assumed that I was in a safe position if I stood or walked 3 feet from the rails. This would be true whether there was or was not a pathway constructed by the railroad for me to walk upon. The pathway, constructed as it was, constituted an invitation. Its existence aggravates the situation. But the majority broadly imply that the pathway, instead of being an invitation to pedestrians to use it, and instead of constituting an implied representation that it was a safe place on which to walk, constituted, by its very presence, a warning that it was a place of danger, and that anyone walking on it was, as a matter of law, contributively negligent. The majority come to this startling conclusion on the theory that they are bound to do so because of the holding in *McKeown* v. *Northwestern Pac. R. R. Co.*, 20 Cal.App.2d 324 [66 P.2d 1250]. That case dealt with an accident on a loading platform. Here we are dealing not with a loading platform, in the literal sense, but with a pathway built and designed by the railroad for pedestrians to walk upon. This means walking in either direction, some pedestrians facing oncoming trains and some with their backs to them. It may be that a reasonable man knows or should know that a loading platform has to be constructed close to the rails and within the danger zone of overhanging equipment, for the convenience of passengers in getting on or off trains and in loading or unloading baggage. In that sense a loading platform may, *per se,* be a warning of danger. Perhaps users of such a platform should be required to face the rails and anticipate injury. On this issue I express no opinion, because it is not here involved. There are other facts that serve to distinguish our case from the McKeown case. These distinctions are fully and fairly set forth in the majority opinion, and need not be repeated here.

For these reasons, I believe that, under the facts here existing, the issue of whether plaintiff was guilty of contributory negligence was a factual one, that the finding of the jury that he was not is supported, and that the trial court erred in entering a judgment notwithstanding the verdict. Therefore, that judgment should be reversed.

Appellant's petition for a hearing by the Supreme Court was denied January 25, 1956. Gibson, C. J., and Carter, J., were of the opinion that the petition should be granted.