[Crim. No. 1315.    Fourth Dist.    July 30, 1957.]

THE  PEOPLE,  Respondent,  v.  EZRA  WILLIAMS,
Appellant.

Victor B. Walton, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, and Lynn Henry Johnson, Deputy Attorney General, for Respondent.

GRIFFIN, J.—Defendant and appellant was charged with the crime of murdering J. C. Mason, and a prior conviction of assault with intent to commit murder in Texas, and assault with a deadly weapon in California. He pleaded not guilty to the charge and admitted the prior convictions. He was represented by a court-appointed attorney. A jury verdict resulted in conviction of murder in the first degree with punishment fixed at life imprisonment. A motion for new trial was denied.

According to the testimony, on the morning of September 2d, 1956, defendant entered a café near 16th and J Streets in San Diego. Two witnesses observed he had a butcher knife and a pocket knife. The butcher knife was taken from him with the promise it would be returned when he left. As he departed he took it with him. About 1 p. m. that afternoon these witnesses observed defendant chasing J. C. Mason down the street. Mason stopped and picked up something (two rocks or bricks) and began to run toward defendant who went inside a near-by liquor store. One Rackley was in the café. The waitress told him of the affair. He left and found Mason was standing in front of the liquor store with a rock in his hand. Rackley took Mason by the arm and managed to get him into his automobile and drove away. Later Mason got out of the car. About 5 p. m. of that afternoon Rackley was stopped by the defendant who climbed into his car. Defendant informed Rackley he did not like what he did that afternoon in taking Mason away because he and Mason had had trouble the day before over cards and a woman and he was going to kill Mason if it was the last thing he did; and that when he started killing he was going to kill everybody around. He testified defendant kept repeating this statement over and over the rest of the

afternoon as he drove him about in his car and while stopping at the homes of different friends of Rackley and while they were there drinking beer with each other. At one of these homes defendant exhibited a pocket knife and repeated that he was going to kill Mason. Both men were asked to leave these homes and at them there was a similar display of the open pocket knife blade by defendant with similar threatening words against Mason. They returned to the café and defendant again repeated that when he started killing he was going to kill "everyone around as he couldn't get nothing but the gas chamber," and he would get Mason if it was the last thing he did. Right after making this statement defendant left the café in a hurry. Mason was coming down the street and defendant went to meet him, acting like a fighter shadow-boxing, ducking and weaving with a knife in his hand. Mason backed away with his hand held up with some object in it like a rock. As Mason backed away and started to run, defendant rushed at him and stuck him with the knife blade, cutting his jugular vein. Both fell to the ground with defendant underneath. Later Mason stood up weakly, bleeding freely, and then fell to the ground and died. Defendant ran and was apprehended by officers. A bloody pocket knife, identified as the one defendant had in his possession, and two rocks were found near the dead body. A witness who knew defendant talked to him while in custody of the officer and asked him why he cut "JC" (Mason) so high and defendant replied: "Dave, I was trying to kill him. He had been taking my money and running me all day . . . I was trying to kill him."

This testimony was corroborated to a great extent by several witnesses. There is evidence that defendant was, during the day, drinking considerable beer and was, at least, partially intoxicated.

As a defense, defendant produced testimony of certain witnesses that in front of the liquor store Mason had cursed defendant, was armed with two big rocks, and threatened defendant's life and that on defendant's arrest defendant complained of a bruise on his arm caused by a thrown brick or rock.

Defendant testified he had known Mason for several years; that he had been angry at defendant for four months over a poker game and that Mason had threatened to kill him. He denied the conversations related by the prosecution witnesses in regard to his threats to kill Mason, and said that Mason attacked him and that he was weaving and ducking in order

to avoid being hit by the rocks which Mason threw; that he did not know he had cut Mason and had no intention of killing him.

On this appeal prosecuted by a different attorney appointed by this court, defendant first contends that the court erred in its instructions to the jury. The original reporter's transcript on appeal recited that in reading a certain instruction to the jury the trial judge said: "If the unlawful killing of a human being is done *'without'* malice aforethought but without deliberation and meditation . . . then the offense is murder in the second degree." On application of the People for an order correcting the transcript to show the truth, under rule 12, subdivision (b) Rules on Appeal, the trial judge signed an affidavit that in truth and in fact he read from CALJIC instruction Number 305 which was one of the written instructions before him, and that he did not use the word quoted in the transcript but instead used the word *"with"* malice aforethought, and related that the record in this respect should be corrected accordingly. This was accompanied by a verified affidavit of one of the court reporters who took and transcribed the notes in respect to the giving of this instruction and she swore the error was the fault of the transcriber and that in truth and in fact her notes show that the trial judge used the words "with malice" in giving the instruction. By order of this court the transcript was corrected accordingly. Defendant now claims there was no sufficient showing authorizing this court to correct the transcript as indicated; that it affirmatively appears that it may well have been "a slip of lip of the trial judge" in reading the instruction before him; that the defendant was prejudiced by such erroneous instruction, and that a new trial should therefore be granted. We see no merit to this argument since the record now affirmatively shows that it has been corrected to show the truth, and there is no sufficient showing that it does not. As corrected, the instruction was proper and no prejudicial error resulted. (*People* v. *Davis,* 133 Cal.App.2d 558 [284 P.2d 496] ; *Gibson* v. *Southern Pac. Co.,* 137 Cal.App. 2d 337 [290 P.2d 347].)

Next it is claimed that defendant's counsel in the trial of the action was guilty of "abuse of discretion" in not calling a certain defense witness (Stokely) to the stand to testify after he had testified at the preliminary examination. The record does show that the witness was subpoenaed at the trial but upon the call of his name by defendant's counsel he did not respond. Thereafter defendant's attorney pro-

ceeded with other witnesses for the defense whose testimony covered, for all practical purposes, the testimony of Stokely which was taken at the preliminary examination and would be but cumulative. It also appears from the transcript at the preliminary examination that defendant's then attorney asked this witness if that was "all that you saw and heard out there that day" and the witness answered in the affirmative. It now appears by affidavit of Stokely "lodged" with the appellate court, that in addition to his testimony given at the preliminary examination he actually saw Mason pick up something from the ground; that each party was walking in an opposite direction and that thereafter they met and started to push at one another; that Mason fell and did not get up again and he couldn't tell which one pushed the other first. Counsel for appellant claims that he was prejudiced by failure to call this witness or, at least, this was newly discovered evidence and a new trial should be granted because of it. There is no merit to this argument. It does appear from the record that defendant's counsel was well trained and legally equipped to, and did fairly represent the defendant at the trial and that he endeavored to have the witness present to testify. It might well appear that had this witness testified at the trial to the additional facts related, he would have been immediately confronted with his statement at the preliminary examination that the testimony there related was all he saw and knew about it.

█ It further appears that the question of newly discovered evidence was not properly presented or was not pressed as a ground for a new trial. This question may not be presented for the first time on appeal. (*People* v. *Mullins*, 145 Cal.App.2d 667, 672 [303 P.2d 58]; *People* v. *Hill*, 116 Cal.App.2d 212, 218 [255 P.2d 54]; Pen. Code, § 1181, subd. 8.) █ No prejudicial error appears. Although the evidence as to who was the aggressor and the question of claimed self-defense is in conflict, there is substantial evidence justifying the verdict of the jury and denying the motion for a new trial. (Pen. Code, §§ 187, 188 and 189; *People* v. *Carmen*, 36 Cal.2d 768 [228 P.2d 281]; *People* v. *Owens*, 27 Cal.App. 2d 606 [81 P.2d 429]; *People* v. *Smith*, 15 Cal.2d 640 [104 P.2d 510]; *People* v. *Hill*, 1 Cal.App. 414 [82 P. 398]; *People* v. *Hilton*, 29 Cal.2d 217 [174 P.2d 5].)

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.

A petition for a rehearing was denied August 26, 1957.